## Houser v. Paducah and Illinois Railroad Company.

## Powell, et al. v. Same.

(Decided December 18, 1917.)

1. Vendor and Purchaser—Title Bonds—Conditions and Restrictions.—Where the owner of a subdivision of lands, who had acquired it by deed imposing conditions and restrictions as to its use, sold certain lots therein, giving to purchaser bonds of title containing identical conditions and restrictions, he is bound, in his possession and disposition of the unsold lots, to do no act that would violate any of these conditions or restrictions.

2. Vendor and Purchaser—Title Bonds—Rescission by Purchaser.— Where vendors, owners of such subdivision, gave bonds of title to purchasers and later sold lots to others for the benefit of a railroad company, for a right of way for its railroad, they violated their covenant that the lots would be used for residential purposes only, and the purchasers are entitled to a rescission of the contract of sale of lots to them.

3. Vendor and Purchaser—Eminent Domain—Covenants—Discharge.. —Vendors of such lots are not absolved from their covenants as to conditions and restrictions as to use of the lots, because they sold lots to a railroad company, with power of eminent domain,. for a necessary public use, where there is no evidence either of the necessity, or a condemnation, for such use.

4. Eminent Domain—Public Use—Evidence—Presumption.—There is. no presumption of necessity for a public use of lots from the fact that a railroad company has built its tracks thereon; but such necessity must be proved before rights of private ownership give, way to public use.

WILLIAM MARBLE for appellants.

. WHEELER & HUGHES and BRADSHAW & NICHOLS for appellees.

RESPONSE TO PETITION FOR REHEARING, GRANTING A RE-HEARING AND MODIFYING THE OPINION HERETOFORE RENDERED.—BY JUDGE CLARKE.

The original opinion in these and other causes heard together is published in 176 Ky., page 290.

The judgments appealed from in these two cases were reversed, and a rescission ordered against appellee, railroad company, of appellants' contracts for the purchase of certain lots in Colonial Heights, a suburb of the city of Paducah, upon the theory, stated in the opinion to have been proved as a fact, that the appellee, Paducah & Illinois Railroad Company, was the real owner, through a purchase by appellees, Rieke, Hughes and Utterback, as its trustees, of the contracts of sale and notes executed to and by appellants for their lots; but, we were in error in stating that Rieke, Hughes and Utterback were proved to have bought the notes and contracts of sale of appellants' property as agents and trustees for the benefit of appellee, railroad company, as there is no proof whatever in the record in either of these two cases to that effect. We fell into this error from the pleadings and proof in some of the other cases heard with these two cases; but, of course, neither the pleadings nor the proof in the other cases can control in these cases.

Manifestly, therefore, our conclusion that appellants were entitled to a rescission against the railroad company, when their contracts of sale and notes were not owned by the railroad company, but were owned by Rieke, Hughes and Utterback, is erroneous; and, to the extent that a rescission was ordered against the railroad company, as well as the reasons assigned therefor, the opinion is modified; and the rescission is ordered against Rieke, Hughes and Utterback, but, upon different grounds.

Upon the pleadings, the following facts set up by appellants Houser and Powell, and not denied by appellees, are admitted to be true:

Colonial Heights was laid off into lots, streets and alleys and a plat thereof was recorded in the county clerk's office by the West End Improvement Company and Zachary and Raymond before appellants or appellees, Rieke, Hughes and Utterback, purchased their respective interests therein, under and subject to which all parties purchased. The title bonds to appellants and the deed to Rieke, Hughes and Utterback specifically bound all parties to observe the conditions and restrictions attached

to the lots, streets and alleys in the sub-division. Among the conditions and restrictions which appellants and appellees alike were, by their contracts, obligated to observe were: That the lots were to be used for residential purposes only; that no residence was to be built costing less than $2,000.00 upon any lot, nor closer than twenty-five feet to any street; that the streets and alleys were to be for the free and unrestricted use of the lot owners; that appellees, Rieke, Hughes and Utterback, purchased from the West End Improvement Company and Zachary and Raymond not only all of the unsold lots in the subdivision, but also purchased, and had assigned to them, the notes and obligations executed by appellants for their lots before the purchase of the sub-division by Rieke, Hughes and Utterback.

It is, therefore, apparent that appellees, Rieke, Hughes and Utterback had, by their contracts with the West End Improvement Company and Zachary and Raymond taken upon themselves all of the obligations of their grantors not only with respect to the unsold lots in the sub-division, but also with respect to appellants' contracts and notes for their lots. They were, therefore, bound in their possession and future disposition of the unsold lots in the sub-division, to do no act that would violate any of the conditions and restrictions contained in the title bonds to appellants and were liable to the same extent as the West End Improvement Company and Zachary and Raymond would have been, if they had violated the conditions and restrictions upon which they sold the lots to appellants. E. P. R. Co. v. Thomas, 79 Ky. 52; Walker v. Bonner, 60 N. J. Eq. 493; Kenwood Land Co. v. Hancock Investment Co., 169 Mo. App. 715; Jones on Real Estate, sections 733, 734, 772; Berry on Restrictions, sections 318 and 332; Pomeroy on Contracts, section 178.

Appellees attempted to defend by pleading that the lots acquired by the railroad company were necessary to be used as its right of way in constructing and maintaining its railroad through Colonial Heights and were acquired by condemnation proceedings; and that Rieke, Hughes and Utterback did not, therefore, voluntarily violate any of the conditions under which they and appellants had acquired and held their respective interests in the sub-division or do anything but what they could have been forced to do. But, this plea of avoidance was traversed by the appellants, and no proof was introduced thereon. Upon the other hand, appellees, by joint answer,

alleged that the railroad company acquired its right of way through Colonial Heights, so far as the parties could convey same, "to use such property as it is used," from Rieke, Hughes and Utterback, and they, from Zachary and Raymond, who had acquired same from the West End Improvement Company. These allegations were not denied by the appellants and are, therefore, to be taken as true.

Thereafter, appellants filed an amended petition, in which they alleged that appellees had broken their contracts with appellants in this, "that with notice that said railroad company intended to build its railroad across Colonial Heights and across the streets and alleys thereof took no steps to prevent same, or the nuisance that would thereby be created, or the invasion of the rights of this plaintiff under his contract, and said Utterback, Rieke and Hughes, in this further, that by deed or contract they sold or gave their actual, active and positive consent to said railroad company building its road as it has done and obstructing the streets and alleys as it has done. That said Utterback, Rieke and Hughes have conveyed a portion of said lots in Colonial Heights to said railroad company." These allegations were not denied and are to be taken as true. It is, therefore, admitted that Rieke, Hughes and Utterback, having purchased not only the whole of the unsold part of Colonial Heights, subject to all the restrictions and conditions named in appellants' title bond, from the owners, but having also purchased from the same owners their every interest in the lots sold to appellants, under executory contracts, and in their notes and obligations executed for same, thereafter sold to the railroad company certain lots for use as a right of way through the sub-division, with the knowledge that the railroad company did not intend to use the lots thus sold to it for residential purposes or subject to any of the contracted restrictions, but intended to build thereon, and necessarily across the streets and alleys, a railroad.

Whatever might have been the result, had the railroad company, in the exercise of its power of eminent domain, taken its right of way from appellees, Rieke, Hughes and Utterback, without their consent, by condemnation, or had they conveyed same to the railroad company because necessary for its use for such purposes, which questions are not here, it cannot be doubted that, when they voluntarily sold to the railroad company, as the records in

these cases show they did, a portion of the lots within the sub-division, with the knowledge that the railroad company would not use same for residential purposes, but would use the lots purchased by it, together with the streets and alleys separating these lots, for a railroad without a necessity for such use being shown they violated all the conditions and restrictions in appellants' title bond, which they had bound themselves to observe. Having thus violated the conditions upon which appellants purchased their lots, appellees, Rieke, Hughes and Utterback, have forfeited their right to enforce against appellants a specific performance of their contracts of purchase and have given to appellants a clear right to a rescission of those contracts, under the authorities we have heretofore cited. To require appellants, under such circumstances, to fulfill their executory contracts, entered into upon the faith that the sub-division would be used for residential purposes only, would be extremely inequitable and subject them to an exceedingly harsh and unconscionable contract, made so after its execution, by no act of theirs, but by the voluntary act of the other party to the contract, and that, too, without any proof that such lots sold for railroad purposes were either condemned or necessary for such use.

Nor is it true, as suggested by counsel for appellees, that Rieke, Hughes and Utterback are in the same position with reference to a rescission as are the West End Improvement Company, and Zachary and Raymond, because neither of the latter parties sold lots, in violation of their contracts with appellants, to the railroad company for a right of way, as did Rieke, Hughes and Utterback.

Defendants not only pleaded that its right of way was acquired by condemnation proceedings, but also that same, as located through Colonial Heights, was necessary for the railroad company's use in the construction and maintenance of its railroad. Plaintiffs denied both the necessity of this strip of ground as a right of way and that it was condemned, and defendants proved neither the necessity nor the condemnation for such use. So, defendants failed to show that the strip of ground, used as a right of way, was either a necessity or was condemned for such use. Whatever may be the real facts, we can consider only what the record discloses; and defendants having failed to prove either the necessity or the condemnation of the ground for railroad purposes, acquired from Rieke, Hughes and Utterback by deed or contract,

it cannot be said that Rieke, Hughes and Utterback, in conveying same to the railroad company, did only what they could have been forced to do, because, unless this ground was necessary for such use and so proved, the railroad company could not have taken same under its power of eminent domain. Sections 835, 840, Kentucky Statutes; Tracy v. E. L. & B. S. R. Co., 80 Ky. 259.

It is therefore apparent that cases absolving parties from liability upon their contracts in reference to land conveyed to another, with power of eminent domain, for a necessary public use for which it could have been condemned, such as Lutes v. L. & N. R. Co., 158 Ky. 259, and Gammon v. Blaisdell, 45 Kans. 221, are not applicable here because neither the necessity nor condemnation for public use, upon which those cases are rested, was manifested by defendants in the instant cases. And there is no presumption of necessity, simply because the railroad company so located and built its railroad, but the necessity for a public use of particular land must always be proved before the rights and liabilities of private ownership must give way to public use.

Wherefore, the petition for rehearing is granted, and the opinion heretofore rendered is modified to the extent herein indicated; and these causes, Houser v. Paducah & Illinois Railroad Company and Powell v. Same, are remanded with directions to enter a judgment consistent herewith.