## Utterback, et al. v. Houser.

(Decided June 17, 1919.)

### Appeal from McCracken Circuit Court.

1. **Appeal and Error—Reversal and Correction of Error.**—Where the opinion of this court in attempting to deal with a number of questions involving several different pieces of real estate, inadvertently overlooks the facts controling one lot, and directs a rescission of a contract with respect to other lots held by the same party, and the opinion fails to specify which lots are included in the contract to be rescinded, and the trial court upon a return of the case, enters a judgment decreeing a rescission of all the contracts of purchase held by one grantee even though one contract was fully executed and which this court did not intend should be rescinded, upon a second appeal the judgment will be reversed and the error corrected.

2. **Appeal and Error—Rescission of Contract—Pleading and Proofs,**—Where neither the pleadings nor the proof will support a rescission of contract, a court is not authorized to enter such judgment.

WHEELER & HUGHES for appellants.

WILLIAM MARBLE for appellee.

Opinion of the Court by Judge Sampson—Reversing.

About 1890 the West End Improvement Company was organized and took over, laid out in streets and alleys, platted, mapped and improved a large body of land as a residential addition to the city of Paducah, and which addition it named "Colonial Heights." Among the lots sold were two, Nos. 106 and 107, purchased by appellee, Henry Houser. About the same time the improvement company sold and conveyed lot No. 71, located on Madison street, to the Caldwell Concrete Company, and this lot was on February 26, 1913, conveyed by the Caldwell Concrete Company to Henry Houser by deed of general warranty, and this deed, which recites the receipt of the full consideration, was duly recorded in the office of the clerk of the McCracken county court on February 26, 1913.

This suit was instituted by Henry Houser on June 24, by filing a petition against the Paducah & Illinois Railway Company, the West End Improvement Company, J. C. Utterback, L. M. Reike and D. H. Hughes, in two paragraphs; the first paragraph relating to lots Nos. 106 and 107, while paragraph 2 relates to lot No. 71, seeking an injunction with respect to the two lots first named, a rescission of the contract and a cancellation of the outstanding purchase money notes, and a recovery of $710.77, alleged to have been paid upon the purchase price of the said two lots, and $1,200.00 damages against the railway company for depreciation in value of the two lots by reason of the erection of a high embankment near thereto, but if that relief could not be granted, then the prayer of the petition is that "said railway company be enjoined and required by mandatory injunction of this court to open up said streets and alleys which they have closed and blocked as aforestated, and restore them in the condition they were in before the railroad commenced to build its said roadbed and said embankment." By the second paragraph it was alleged that Houser had purchased lot No. 71 in Colonial Heights addition to Paducah from the Caldwell Concrete Company by a deed of general warranty, and that the railroad built its embankment across certain streets and alleys adjacent to lot No. 71 in such way and manner as to obstruct the same, and to cut off the approach to the lot; and it was further alleged that "by reason of these wrongs done by said rail-

way company, plaintiff's lot No. 71 has been rendered unsuitable and valueless for a home or for residence purposes, and has totally destroyed the salable value of said lot to his damage six hundred dollars, and constitutes a taking and destroying of his property within the meaning of the eminent domain clause of the Constitution and laws of Kentucky, and constitutes a private nuisance to plaintiff and a public nuisance to all persons desiring to use said streets and alleys and to the public generally. That by being thus deprived of the use of said streets the plaintiff has suffered and will suffer great and irreparable injury, and is remediless at law because said railroad company is insolvent.''

With respect to this paragraph the prayer is, ''that he (plaintiff) may have judgment in damages against said railroad company for six hundred dollars, and if that cannot be done; that said railroad be enjoined and required by the order and mandatory injunction of this court to open up all said streets and alleys in said Colonial Heights addition which they have closed and obstructed as aforesaid, and restore the same to the same condition they were in just before said railroad company commenced to build its roadbed and said embankment.''

Issue being joined and the case prepared, the court adjudged Houser $150.00 in damages against the Paducah & Illinois Railroad Company on account of the obstruction of the streets and depreciation of his lot No. 71 on Madison street, and from this judgment, which included several other items, he appealed to this court and obtained a reversal of the judgment in part. (See Husbands, &c. v. Paducah & Illinois Railroad Company, 176 Ky. 290; also same style 178 Ky. 458.) Upon a return of the case to the lower court a judgment was entered in conformity to the opinion of this court with respect to several matters involved, and with respect to that part of the judgment affecting lot No. 71, the court entered the following:

''And now in reference to the lot mentioned and described in paragraph No. '2' of plaintiff's original petition herein, namely, lot No. 71, Colonial Heights, situated on Madison street, in said addition, it is now in conformity to said opinion of the Court of Appeals adjudged that the contracts and deeds mentioned in said paragraph No. 2, of the petition be and they hereby are rescinded, set aside

and held for naught, and the plaintiff herein is ordered and directed to convey by special warranty deed said lot to the defendants, J. C. Utterback, L. M. Rieke and D. H. Hughes, and the former judgment of this court herein adjudging as to said lot that the plaintiff, Henry Houser, recover of the defendant, the Paducah & Illinois Railroad Company, one hundred and fifty dollars, with six per cent per annum interest thereon from the date of said former judgment until paid and costs be set aside, and held for naught, and in lieu thereof it is now adjudged by this court that the plaintiff, Henry Houser, recover of and from the defendants, J. C. Utterback, L. M. Rieke and D. H. Hughes, the amount he paid for said lot, namely, four hundred dollars, together with interest thereon from the date he paid same (February 9th, 1913) until paid, and his costs in this action expended and execution is awarded him therefor.''

And from this judgment Utterback and others pray an appeal in this court, insisting that the trial court erred in adjudging a rescission of the contract because (1) it was completely executed; and (2) the party with whom Houser made the contract, the Caldwell Concrete Company, was not a party to the action; (3) the allegations of the petition with respect to lot No. 71 were not sufficient to support a rescission of the contract, and the prayer of the petition touching the relief sought was for damages and for a mandatory injunction against the railroad company and not for rescission.

(1) The West End Improvement Company conveyed lot No. 71 to the Caldwell Concrete Company by deed of general warranty, and the concrete company paid the full consideration therefor many months before the concrete company sold and conveyed the same lot to Houser. When Houser purchased the lot from the concrete company he paid the full consideration therefor and took a general warranty deed. This was an executed contract, for there was nothing left to be done by either party to it. There is no fraud or wrong alleged to have entered into the contract, and no ground set forth why it should be rescinded, and without such allegation the court was powerless to grant such relief.

(2) In order to have entitled Houser to a rescission of the contract in any event the party with whom the contract was made would have been a necessary party to

the proceedings. The Caldwell Concrete Company was not and is not a party to this action, although it made the deed for lot No. 71 to Houser. This being true, Houser was not entitled to have a rescission of the contract in this proceeding.

(3) Houser appears to have recognized in the bringing of his action his right to damages only or to an injunctive remedy, and did not seek a rescission with respect to the contract under which he acquired lot No. 71. He was entitled, however, to damages and these were awarded him in the first judgment. But as the opinion in the case on its first appeal, while dealing with the first paragraph of plaintiff's petition and evidently overlooking the second, reversed the judgment and directed a rescission of the contract, it is quite evident that a rescission of the contract was not intended to apply to the executed contract by which Houser acquired lot No. 71, but only to lots Nos. 106 and 107, which he acquired by executory contract from the West End Improvement Company. The prayer annexed to this paragraph of his petition indicates that he sought only damages for the obstruction of the streets and consequent depreciation of his property, or in the event he could not have such relief then a mandatory injunction requiring the railroad company to restore the streets and alleys to the condition they were in immediately before the construction of the railroad. A court of equity will not set aside, cancel or rescind a contract until some substantial reason is shown why such relief should be granted. In order to justify such relief an averment of fraud, mistake, misrepresentation, total or partial incapacity of the party or parties to contract, duress or overreaching, illegality, or some defect or insufficiency of the property or title thereto concerning which the contract is made, must appear in order for a court of equity to decree a cancellation or rescission of a contract. 6 Cyc. 286-7.

Manifestly the trial court was in error in directing a rescission of the contract with respect to lot No. 71, and in directing the railroad company to pay to Houser the price of the lot, $400.00, with interest, as well as in directing Houser to convey by special warranty deed the lot in question to the railroad company. No doubt the court fell into this error in attempting to follow the opinion rendered on the first appeal, for that opinion was not as

explicit as it should have been with respect to the contract which was to be rescinded and the lots affected. In attempting to deal with so many questions in a single opinion some confusion resulted and we inadvertently overlooked the facts surrounding the contract by which Houser acquired lot No. 71 from the Caldwell Concrete Company, and instead of distinguishing the contract by which he acquired lots Nos. 106 and 107 from the improvement company, from the executed contract by which he took title to lot No. 71 from the Caldwell Concrete Company, we had in mind only the first transaction, and this no doubt accounts for the error of the trial court in entering the judgment from which this appeal is now prosecuted.

Houser's remedy is one sounding in tort, and he may recoup in damages. For these reasons the appeal is granted and the judgment is reversed. The trial court will enter in lieu thereof a judgment awarding Houser such reasonable damages for the closing of the streets and depreciation of lot No. 71, as he has sustained as a direct result of the wrongful acts of the railroad company.

Judgment reversed.