## Bull v. Slaughter.

(Decided November 30, 1926.)

### Appeal from Boyle Circuit Court.

Deeds—Deed of Helpless Old Negress to One who had Agreed to Furnish Care in Return for Living Quarters Held Subject to Cancellation for Undue Influence.—Where, after old negress, complainant in suit to cancel deed, caused defendant, active woman, and family to move in and care for her in exchange for rent, she later conveyed property to defendant to keep family from leaving, deed would be canceled because of undue influence.

OWEN S. LEE and W. E. DARRAGH for appellant.

SANDERS E. CLAY for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

Lucille Hope Bull, a negro woman eighty-eight years old, owned a house and lot in Danville worth about a thousand dollars and drew a pension of $30.00 a month from the United States. She lived alone in the house; her children were dead. She had two grandchildren who lived in Lexington, Kentucky, and also had a sister who lived in Danville four or five squares from her. In October, 1923, Lizzie Slaughter, a negro woman about fifty-three years old, was going around getting up collections; she and Lucille belonged to the same church. She went to Lucille's house and finding the door shut and no one coming to the door she went in. She found Lucille in bed sick. Lucille told her she had been in bed three days and had had nothing to eat. Thereupon Lizzie Slaughter made up a fire and fixed her something to eat. The next day she returned and waited on her. Then Lucille proposed to her that she and her family should move into a part of her house; that a redryer would be started in a few days and she could make some money running a restaurant and furnishing meals to the men working there. It was also part of the proposition that Lizzie should look after her and give her such attention as she needed as she had the use of the house free. Lizzie Slaughter's husband was a minister; she had two children. They moved in. The restaurant did not prove a success and about a month later Lizzie proposed to move out. Lucille objected to being left alone and after various conversations between them Lizzie got a lawyer to write a deed by which Lucille conveyed the property to her in consideration that Lizzie would stay there and take care of her as long as she lived, her pension to be applied to her support. The deed was signed on December 28, 1923, in the presence of a notary, who took her acknowledgment, and two witnesses who witnessed her signature. In January, 1924, Lucille left the house and went to her granddaughter in Lexington. On February 13, 1924, she brought this suit to cancel the deed on the ground that it was procured by duress and when she was mentally incompetent to make a deed. Proof was taken and on final hearing the circuit court dismissed the petition. The plaintiff appeals.

The defendant proved by the notary and the two subscribing witnesses that Lucille was thoroughly at her-

self when she signed the deed and well understood it. She also proved by two witnesses that Lucille had offered to make a similar arrangement with another person before Lizzie came to her house, and by two other witnesses she proved that after the deed was made Lucille told them about the deed and expressed her satisfaction with it. On the other hand, the proof, uncontradicted, is that Lucille could neither read nor write; she was nearly blind; she walked with difficulty and was in a helpless condition. Dr. Fry, who had practiced on her for years, says this:

"Well, she just seemed to have a general go-to-pieces, using that term both physical and mental, and she was all out. She was minus both in her mental condition and her physical, being due to her age. She couldn't control her mind."

Her pastor, who testified as a witness for the defendant, said this as to her condition:

"She was blind and hardly able to walk, just dragged around, would catch hold of a chair from place to place."

A neighbor, who knew her well, says this:

"She wasn't all the time in her clear mind; she wasn't crazy, but she would go out and get bewildered and wouldn't know the way home; she was just old, kind of absent-minded, but she didn't know all the time what she was doing. She had changed a great deal in a year or two."

This evidence as to her general condition is uncontradicted. On the other hand, Lizzie Slaughter, an alert, active woman, had charge of her. She had ministered to her wants from the time she moved in in October until the deed was made on December 28. The original proposition that she should have the use of the property, rent free, for taking care of Lucille, in this time developed into a deed by which she took the property in fee simple for the same consideration. There was nobody in the house but them. The old woman was dependent upon her. As might reasonably be expected in a case of a childish old person, in a few days she got dissatisfied and left of her own accord.

The facts bring the case aptly within the rule laid down in McDowell v. Edwards, 156 Ky. 479, in these words:

"The law looks with suspicion upon the transfers of property by persons mentally or physically infirm to those having custody of them. Even when parties in good health stand in a confidential relation to each other, the burden is upon the stronger character who procures an advantage, to show that a transaction was fair; and relief will be afforded in equity in all such transactions in which influence has been acquired and abused, in which confidence has been reposed and betrayed."

In England v. Crawford, 196 Ky. 666, where the facts were not as strong as here, the court thus stated the rule:

"There existed a confidential relation between defendant and the decedent at the time the attacked writings were executed. He and his wife sustained the relation of custodians of and *quasi* nurses to decedent and his wife, and observation and experience teach that, in some instances, at least, the nurse acquires great influence over his patient, especially if the treatment accorded the patient is kind and attentive. In such cases the burden is on the one seeking to uphold the transaction to prove 'by the clearest evidence that its execution was freely and voluntarily entered into and was devoid of inequitable incidents.' Sword v. Fields, 192 Ky. 629, and numerous other cases cited therein."

While the proof does not sustain the charge made by the old woman that the deed was obtained from her by duress, the proof does show that the deed was obtained when the grantee had charge of the grantor and was the result of her influence and that she took advantage of the grantor's weakness and so obtained the deed from her. In view of the grantor's extreme age and her mental and physical condition, the deed should not now stand, for in the frame of mind of the parties the grantor cannot live with the grantee and, if the deed stands, the old woman has lost her home; when in fact the use of all the property, except the old woman's room, would reasonably have compensated for such personal attention as she would require from the occupant of the house, consid-

ering her pension of $30.00 a month. This is not a case where the grantor acquiesced in the deed and the grantee fully performed the conditions for support as long as the grantor lived. The grantee will be in the same position as she was before the deed was executed. The deed should be set aside. Hitchcock v. Tackett, 208 Ky. 803; Thompson v. Thompson, 209 Ky. 677.

Judgment reversed and cause remanded for a judgment as above indicated: