## Bobbie Norton, et al. v. Mitchell Norton, et al.

(Decided March 22, 1927.)

Appeal from Rockcastle Circuit Court.

1. Deeds.—Test of mental capacity to convey homestead is whether grantor had enough reason and intelligence to understand consequences of transaction and exercise reasonable judgment in regard to it.

2. Deeds.—Where trasaction involves conveyance of land by father to son in consideration of latter's maintaining and caring for parent and is free from fraud and undue influence, less degree of metal capacity is required than in other transactions.

3. Deeds.—Grantor must be held to have had sufficient mental capacity to execute valid deed, if he understood business in which engaged, knew extent and value of property and how he wanted to dispose of it, and was able to keep such facts in mind long enough to plan and effect conveyance without prompting or interference from outside.

4. Cancellation of Instruments.—Court of equity will not set aside, cancel, or rescind contract, unless some substantial reason is shown for such relief.

5. Cancellation of Instruments.—To decree cancellation or rescission of contract, averment of fraud, mistake, misrepresentation, total or partial incapacity of party or parties, duress or overreaching, illegality or some defect or insufficiency of property or title thereto must appear.

6. Deeds.—Evidence held insufficient to warrant cancellation or rescission of father's conveyance of his home place to his son, in

consideration of latter's living with, caring for, and supporting him for rest of his life, on ground of father's mental incapacity.

B. J. BETHURAM for appellants.

C. C. WILLIAMS for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Appellants, Bobbie Norton, et al., instituted this action in the Rockcastle circuit court against Mitchell Norton and other children of R. P. Norton, deceased, for a sale of farming lands located in Rockcastle county, alleged to be the property of the plaintiffs and defendants, children and heirs of the late R. P. Norton, from whom the land had descended, and a division of the proceeds. Appellee, Mitchell Norton, answered asserting title to the whole farm in himself by deed from his father, R. P. Norton. By reply appellants denied the ownership of Mitchell Norton of the farm described, but admitted that the father, R. P. Norton, had executed deed to Mitchell for the lands, averring that at the time the "signature and acknowledgement of the said R. P. Norton were procured to said deed he was old and feeble both in mind and body; that he was not mentally capable of executing said deed; that he had practically no mind and that at the time of the execution of said paper he was wholly incapable of understanding the nature and extent of his property, the objects of his bounty, and was incapable to make a rational survey of them, and to dispose of them according to a fixed purpose of his own." By agreement the affirmative allegations of the reply were controverted of record. The lower court adjudged the deed from R. P. Norton to his son, Mitchell Norton, valid, and dismissed appellants' petition, and they appeal.

R. P. Norton was the father of all the parties, appellants and appellees. At the time of his death he was only seventy-four years of age. His wife had passed away many years before and his children had all married and left the paternal home. The father could not well live alone, so he induced his daughter and her husband, Mr. and Mrs. Price, to move in and live with him, and they did so for a spell, but later decided to seek their fortunes in another state, and went away. Following this the father besought the son, Mitchell, who had a family, to move in and live with him, and Mitchell did so. In Sep-

tember, 1924, the father executed a deed for his farm to Mitchell for the recited consideration of $1,500, represented by note, and the further consideration that Mitchell was to live with and take care of his father, furnish him support and maintenance during the remainder of his life, and give him a decent burial. Of the $1,500 only $467.50 was paid up to the time of the death of the father. The farm, one of moderate size, was not of very great value, but witnesses differ as to its actual value, some giving it as their opinion that it was worth $2,000, while others stated it as high as $4,200. The majority of the witnesses, however, thought the fair cash value of the farm at the time of the sale by the father to the son to be about $2,500 to $3,000. The father retained a life estate in the lands. His expectancy at that time was about eight years. The remainder interest, therefore, was worth very much less than the fee, which would have carried immediate possession.

On the question of mental incapacity of the grantor the evidence for the appellants went no further than to show that the father was an old man, rather feeble in health and somewhat impaired in mind, though no witness would state that his mind was unsound. One or two witnesses stated that he was forgetful and sometimes did not remember that he had made a statement only a short time before; and his daughter said that he once asked her a short time after he had eaten his dinner if he had eaten, and he said he could not remember. On the other hand a number of witnesses testified that R. P. Norton was a man of good common sense, and up to the time of his death was of sound mind and entirely competent to make a deed to real property. It was also shown that while he was on the shady side of life and had a little touch of kidney trouble and some other physical infirmities, he was not so weak physically or mentally as to need attention or guidance in the transaction of business. He died rather suddenly of accute indigestion, or some such trouble.

The question is as to whether the grantor, R. P. Norton, had mental capacity sufficient to know his property and to understand the transaction which involved the conveyance of his homestead. The test is, whether the person had enough reason and intelligence to understand the nature and consequences of the particular transaction into which he was about to enter and to exercise reasonable judgment in regard to it. Where the trans-

action involves the conveyance of land by a father to his son in consideration of the son maintaining and caring for his parent, if the transaction be free from fraud and undue influence, a less degree of mental capacity is required than when the parties are engaged in some other transaction. A grantor must be held to have sufficient mental capacity to execute a valid deed, if, at the time it was made, he understood the business in which he was engaged and knew the extent and value of the property and how he wanted to dispose of it, and was able to keep such facts in his mind long enough to plan and effect the conveying without prompting or interference from the outside. Black on Rescission and Cancellation, vol. 1, sec. 263.

"A court of equity will not set aside, cancel or rescind a contract until some substantial reason is shown why such relief should be granted. In order to justify such relief an averment of fraud, mistake, misrepresentation, total or partial incapacity of the party or parties to contract, duress or overreaching, illegality, or some defect or insufficiency of the property or title thereto concerning which the contract is made, must appear in order for a court of equity to decree a cancellation or rescission of a contract. 6 Cyc. 286-7." Utterback v. Houser, 184 Ky. 789, 213 S. W. 191.

The court is of opinion that the evidence in this case is hardly sufficient to warrant a cancellation or rescission of the contract by which the father conveyed the home place to his son, Mitchell. The evidence is not all one way, but it would appear to preponderate in favor of the finding of the chancellor, that the deed was valid and carried the title, hence we conclude that there was no error in the judgment.

Judgment affirmed.