## King's Widow and Heirs at Law v. King, et al.

(Decided November 15, 1927.)

### Appeal from Harrison Circuit Court.

1. Deeds.—In action to cancel and set aside a deed of conveyance to nephew on the ground of undue influence and mental incapacity of the grantor, evidence held to show that the conveyance was voluntary.

2. Deeds.—Where a deed has been solemnly executed the court should not lightly set it aside.

M. C. SWINFORD, SWINFORD & SWINFORD, STEPHENS L. BLAKELY and JOHN H. KLETTE for appellants.

W. H. LAIL and HANSON PETERSON for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

An action was instituted in the Harrison circuit court in 1924 by Joshua King, in which it was sought to cancel a deed of conveyance executed on August 11, 1921, by Joshua King and his then wife to the appellee D. B. King. The deed purports to convey a house and lot in Berry, Ky., to D. B. King, in consideration of $1 cash in hand paid, and the further consideratoin of the love and affection, which Joshua King had for his nephew, D. B. King. Joshua King had no children, and his nearest relatives were nephews and nieces. After the execution of the deed to D. B. King in 1921, his then wife died, and he married again. After his last marriage, he demanded of the appellee D. B. King that he reconvey the property to him, or, rather, he demanded of his nephew that he return the deed to him. After Joshua King instituted this action, and after he testified by deposition in the case, he also died, leaving a widow, who is now one of the appellants.

The chancellor decided that appellees had manifested not sufficient equity in their case to justify him in granting the relief, and he accordingly dismissed their petition.

At the time the deed was executed Joshua King was 77 years of age according to the contention of appellees, or 79 years of age according to the contention of appellants. He had formerly lived in Woodford county, Ky. On the 15th day of February, 1919, he purchased the property in question, for which he paid $1,750. On August 4, 1921, he had a small fire at his residence, which did little damage. It appears that he became very much incensed at one Laura Dennis, and that he accused her of having been responsible for the fire. There is nothing to show whether there was any basis for his accusations. It is also made to appear that Laura Dennis threatened to institute suit against him for slander, and that she had employed an attorney for that purpose who had notified Joshua King of the intention to institute suiit against him. The effect of this was to seriously agitate

the mind of Joshua King. On the night of the 10th of August, 1921, it appears that he went to the home of D. B. King, who lived near by, and told him that it was his desire to have the property conveyed to him. It was agreed between them that they would meet the next day and have the deed prepared, and this agreement was carried out. The deed was prepared by R. P. Blair, an attorney of Berry, and, immediately after the deed was prepared, they went to the county seat, and caused the deed to be recorded. The threatened suit was not instituted against Joshua King, and the matter of the deed was not further discussed until after his marriage to his last wife, when he made an effort to recover the property which he claimed had been his at all times.

The petition, as finally amended, seeks to have the deed set aside on the grounds of undue influence exercised by D. B. King over the mind of Joshua King, and the mental incapacity of Joshua King. There is some proof in the record that D. B. King used the threatened suit by Laura Dennis as a weapon to induce Joshua King to execute the deed to him, but the proof that Joshua King voluntarily executed the deed of his own free will and accord preponderates. There is some proof that Joshua King was not mentally alert at the time he executed the deed, but the proof strongly preponderates in support of his mental capacity. There is proof that Joshua King had expressed the intention from time to time for several years to convey the property to D. B. King. In fact, the proof tends to show that the threatened suit only accelerated his intention to vest the title to the property in D. B. King.

The learned chancellor delivered a written opinion in the case, and it is clear, concise, and correct. It is as follows:

"Joshua King, plaintiff herein, on the 11th day of August, 1921, conveyed to defendant D. B. King a certain house and lot in the town of Berry, worth approximately $2,000. The consideration stated in the deed was $1, love and affection.

"At the time of this conveyance, his (Joshua King's) wife, the companion of many years, was living, but she appears to have been in the last stages of tuberculosis, and both she and her husband realized that she had but a short time to live. A few months before this conveyance was made the residence on the property had been attacked by fire,

and, although the damage amounted to little, it appears that Joshua King was much exercised concerning the cause. Probably excited by the fire, he appears to have been of the opinion that the fire was of an incendiary origin, and charged that either a child living near or a woman living in the neighborhood had been the cause of the fire, or had sought to burn his home. He conceived the idea later that the woman against whom he had made the charge intended bringing an action against him, and, although she did not do so, it, appears from the evidence that his fear that such action might be brought was well grounded.

"Joshua King was at that time about 79 years of age. He had been in service in the war between the states, and drew a pension from the government of $50 per month. He had no children nor any one dependent upon him, except his wife, whose years were being brought to a close. He felt that he had possibly made statements while excited following the fire which might cause litigation and possibly judgment against him. He felt that his pension was secure, and that it was quite sufficient for the balance of his days. He may, or may not, have thought that a liberal and beneficent government might increase his pension. The chances are that he had never heard of a pension once granted being stopped, but had heard of many being increased, and it appears that, if he had such hope, it was justified, because, when he gave his deposition in this case, his allowance from the government had been increased to $72 per month, and that he then had an application in for an increase to $90 per month. He had no reason to fear that poverty would ever overtake him, and about the only thing he had to worry about was the possible suit for damages.

"Feeling that the future was well provided for, and wishing to avoid this threatened litigation, he went to his favorite nephew, and offered to convey this property to him. Together they went to a reputable attorney, and had him draw the deed.

"This court is unable to find anything of a convincing nature in the proof indicating that Dallas King (D. B. King) did, or attempted to do, anything to influence or overreach or take advantage of Joshua King. It is true that the plaintiff was ad-

vanced in years, but, when called upon to testify in this case, his testimony reads as clear as any other witness testifying. A few months after his then wife died, and after this deed was made to Dallas (D. B.) King, who appears to have been his favorite nephew, and to whom it appears he had always wanted this property to go.

"This court concludes that this conveyance was voluntarily made by Joshua King according to a long fixed notion, and that he was only hastened in carrying his desire by threatened litigation and that Dallas King (D. B.) in no way influenced him to so convey."

We cannot improve on the opinion of the chancellor, and it meets with our hearty approval. But counsel for appellants contend that this case should be governed by the opinion of this court in the case of Koger v. Koger, 92 S. W. 961, 29 Ky. Law Rep. 235. It is true the court in that case found no particular acts of undue influence or fraud, and expressed the opinion that it was extremely difficult to show by evidence the exercise of fraud or undue influence, and that in almost every case of that nature undue influence and fraud must be established, if at all, by circumstances. The court found in that case that the disposition of the estate was unreasonable and unnatural, and further found that there were physical and mental influences which manifested that an influence had been exercised over him by his son. Here there was no unnatural or unreasonable disposition of the property, and there is little, if any, evidence of either mental or physical infirmities other than such physical infirmities as are incident to old age. There are many other cases cited by counsel for appellant substantially supporting the case of Koger v. Koger, supra, but the facts in this case do not bring it within the rule announced in these cases.

A deed solemnly executed should not be lightly set aside. We agree with the chancellor that the record in this case shows that Joshua King knew exactly what he was doing at the time he executed the deed, and did exactly what he wanted to do. If that is true, neither he nor those claiming under him are entitled to have the deed canceled.

Judgment affirmed.