## Sherman's Executor, et al. v. Keller.

(Decided June 5, 1928.)

### Appeal from Harrison Circuit Court.

1. Deeds.—In suit to cancel deed on ground of mental incapacity, lack of consideration, and fraud and undue influence, where it was established that grantee sustained relationship of custodian and nurse to grantor, law places on grantee burden to show that execution of deed was free and voluntary act of grantor and devoid of inequitable incidents.

2. Deeds.—In suit to cancel deed, in absence of inequitable incidents in transaction or proof that deed was not freely and voluntarily entered into, presumption is that it was free and voluntary act of grantor.

3. Appeal and Error.—The judgment of the chancellor should not be disturbed unless it is clearly against the weight of the evidence.

4. Deeds.—In suit to cancel deed to house executed by an old and illiterate colored woman to one who was her tenant in return for services performed and to be performed, evidence held not to conclusively show that deed was obtained through undue influence exercised by grantee.

W. S. CASON and SWINFORD & SWINFORD for appellants.

CHESTER M. JEWETT, DANIEL BURBIN and W. W. VANDEREN for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant instituted suit in the Harrison circuit court seeking the cancellation of two deeds executed by

Mary Sherman conveying certain property in Cynthiana, Ky., to the appellee, Thomas H. Kellar. Mary Sherman was an old colored woman, and Thomas H. Kellar is a colored man. The grounds alleged in the petition as a basis for cancellation of the deeds are mental incapacity, lack of consideration, and fraud and undue influence practiced by the appellee upon her. Mary Sherman was the owner of a lot on which were situated four small houses. She lived in one of them and rented the others. About the year 1916 appellee lived in one of the houses, and the proof shows that he gave her some attention in the way of looking after her affairs. On December 17, 1918, she executed a deed to appellee for one of her houses, but she reserved the full use and control of the property during her life. The consideration expressed in the deed is $1 and the further consideration of the appellee's having looked after the comfort of the grantor by waiting on her and seeing that she had been comfortable for six years, and of having kept her houses and fences repaired, and the further consideration that he would continue to look after the comfort of the grantor the remainder of her life and repair her houses and fences just as he had done for the past six years.

The proof shows that appellee had not been looking after the comfort of the grantor, or keeping her houses and fences repaired, for a period of six years. He stated himself that his services prior to the execution of the deed covered no more than one year; but we do not regard this as material.

The house conveyed to appellee was worth $500 or less. The deed was prepared at the request of Mary Sherman by a lawyer of ability and standing. Some of the proof tends to show that appellee rendered little, if any, service to Mary Sherman, either before or after the deed was executed, but he testified himself, and was supported by other witnesses, that he brought her provisions, cooked for her about once each day; that he did work about the premises and furnished a few things for which he paid. He continued the same character of service after the deed was executed that he had been rendering to her prior to that time. She lived five or six years after the execution of the deed. A short time thereafter some of her relatives caused an inquest to be held to inquire into her sanity. It was found that she was of sound mind and competent to transact her own business. She was old and illiterate and physically

weak, while the appellee was a man about 50 years old with at least ordinary sense and was strong and vigorous. For some time he had been, to some extent at least, sustaining the relationship of custodian and nurse to Mary Sherman, and, as that fact is established, the law places on him the burden to show that the execution of the deed was the free and voluntary act of Mary Sherman and devoid of inequitable incidents. England v. Crawford, 196 Ky. 661, 245 S. W. 519.

If there is nothing inequitable in the transaction and there is no proof to show that the deed was not freely and voluntarily entered into, the presumption is that it was the free and voluntary act of Mary Sherman. Looking at the surrounding circumstances, we find that she was the owner of four houses, and that she conveyed one of them, which was probably the most valuable, to the appellee for services which he had rendered, and which she expected that he would render, to her. The deed was prepared by a reputable attorney. She was very old and must have known that in the course of nature she could not live a great while. No one closely connected by ties of blood had shown any great concern about her affairs or her comfort. She was not in good health, and she probably anticipated that in her declining days she would need some one to look after her and render to her the services necessary for her comfort. She retained the possession and control of the house she conveyed during her life. These were the circumstances surrounding the transaction at the time she executed the first deed of conveyance. She seems to have made no complaint about the services rendered her. On December 16, 1923, she was adjudged incompetent to manage her affairs, and within a few days thereafter a committee was appointed to look after her. Thereafter the committee gave notice to appellee to vacate the premises. Prior to giving of that notice and in May, 1922, which was before she had been adjudged incompetent, she executed another deed of conveyance to appellee for another small house in consideration of $200. He did not vacate the premises, and the committee instituted this action to have the two deeds cancelled. After the institution of the suit Mary Sherman died. She left a will which had been executed by her on August 14, 1923. W. S. Cason, who was acting as her committee at the time of her death, was named executor of the will, and the suit was revived in his name as executor. By the terms of her will after the payment of her

debts and funeral expenses she devised and bequeathed her property to her niece, Cora Williams, her nephew, Robert Boswell, and her sister-in-law, Mattie Wright, in equal shares.

The chancellor did not find enough in the facts which we have briefly set out to authorize him to enter a judgment setting aside the deeds, and dismissed the petition. The judgment of the chancellor should not be disturbed unless it is clearly against the weight of the evidence. Counsel for appellant have filed an excellent brief in which they have presented their case in a most favorable light. They pitch their argument largely on the ground of undue influence. They correctly state that undue influence is a species of fraud, and that it may consist in the use, by one in whom confidence is reposed by another, or who holds a real or apparent authority over another, of such confidence and authority for the purpose of obtaining an unfair advantage over him; or in taking an unfair advantage of the weakness of the mind of another; or in taking a grossly oppressive and unfair advantage of the necessity and distress of another. These equitable principles announced by chancery courts, so it is argued by counsel for appellant, have been upheld from time to time by the English courts and the courts of the various states of our own country, and that nowhere have they been more often referred to and expounded than by our own court where they have been recognized as a haven of refuge and an avenue of relief by those unfortunates who have become the victims of unscrupulous and designing minds. Counsel insist that these principles ought to be applied in this case, and that is true, as they should be applied in all cases—that is, if appellee has brought himself within the rules so announced. Counsel for appellant plant their case largely on the opinion in the case of Bull v. Slaughter, 216 Ky. 792, 288 S. W. 747, where the facts were somewhat similar. A reading of that opinion, however, convinces us that there is a material distinction between that case and this. In that case the grantor remained with the grantee but a few weeks after the deed had been executed, and within a few weeks after leaving she instituted a suit to cancel the deed. Counsel also rely on the case of McDowell v. Edwards, 156 Ky. 475, 161 S. W. 534, where the court announced the rule that the law looks with suspicion upon conveyances made by persons mentally or physically infirm to those having custody of them. Another case relied on by

counsel is that of England v. Crawford, supra.    That case goes no further than to hold that where confidential relations exist the burden is on the one seeking to uphold the transaction to establish that the execution of a deed or contract was freely and voluntarily entered into and was devoid of inequitable incidents.   The case of Sword v. Fields, 192 Ky. 629, 234 S. W. 202, is to the same effect. There are many other cases announcing the same doctrine.

We doubt whether the facts in this case show that appellee stood in confidential relations to Mary Sherman. The appellee lived in one of the houses of the grantor as a tenant, and he had performed certain services for her which did not tend far towards establishing such relations between them.   Conceding, however, that the burden was on the appellant, and considering all of the facts in the case, it appears to us that while the preponderance of the evidence tends to show that Mary Sherman was old and illiterate and that she was easily influenced, yet she had sufficient mind to know what was for her best interest at the time she executed the first deed.   The appellee does little more than to place before the court his part in the transaction and to show that he rendered the services called for in the deed.   While this court must scrutinize with exacting care such transactions, it must also recognize that a person who is old has the right to make provisions for care and attention in his declining days. This court must also recognize that deeds of conveyance when executed should not be set aside on a mere suspicion that the execution thereof was obtained through some illegal means.   In this case appellee meets the burden of proof by showing a faithful and honest performance of his duties and establishing the surrounding circumstances at the time of the execution of the deed.   Manifestly, it would be inequitable to take from him that which he labored for after he had fully performed the services, if his services were honestly performed and the transaction is free from fraud.   No one knew better than Mary Sherman whether he was rendering the services which he had contracted to perform.   She lived several years after she executed the deed and had an opportunity to ask that it be rescinded if she was dissatisfied.   In our opinion this case falls within the rule announced in Lewis v. Bullock, 218 Ky. 831, 292 S. W. 508; Applegate's Administrator v. Jones, 220 Ky. 205, 294 S. W. 1032; King's Widow and

Heirs at Law v. King, 221 Ky. 775, 299 S. W. 960; Norton v. Norton, 219 Ky. 612, 294 S. W. 191.

The latest case dealing with the questions confronting us is that of Yankey v. Clark, 224 Ky. 346; 6 S. W. (2d) 274. It was there held that persons procuring a transfer of property to themselves from one mentally or physically infirm to whom they stand in confidential relation have the burden of showing that the transaction was fair, and that the law looks with suspicion on a contract involving a transfer of property by a mother to her daughter on the death of the mother in consideration of care and attention. The opinion in that case held that the evidence failed to show that the contract for transfer of the mother's property to the daughter in consideration of the care of the mother was obtained through undue influence. The facts in that case tended more strongly to support the contention that the contract was brought about through undue influence than it does in this case.

As to the second deed, the evidence shows that a valuable consideration was paid for the property, and that the consideration so paid was substantially the full value of the property.

The briefs in this case admirably submit for our decision the law and the facts to guide us. The case is a close one, but, taking everything into consideration the judgment of the chancellor turns the scale in favor of appellee.

Judgment affirmed.