## Scherzinger et al. v. Scherzinger et al.

Oct. 10, 1939.

Thomas W. Beale for appellants.

John O. Arnold, J. E. Hutchins and Frank Dacher for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellants, children of Theodore Scherzinger, deceased, by his first wife, are appealing from a judgment in favor of the appellees, Frances Scherzinger, the second wife of the deceased, and the three children born to Frances and the deceased, in which the petition of the appellants was dismissed. Frances and Theodore Scherzinger had been living together as husband and wife for approximately 38 years at the time of his death Decem-

ber 21, 1938. It appears that all six of the children were married at the time their father died, and that Mrs. Scherzinger was the only person dependent upon him.

The deceased was afflicted with cancer, and he became so ill in the early part of November, 1938, that he was forced to give up his work and remain at home. He was acquainted with his condition. On November 16th he executed a deed to his wife, whereby he conveyed to her the family home in Louisville, together with four lots in another part of the city. On November 18th the name of Mrs. Scherzinger was added to the checking account of the deceased at the bank and also to a certificate of deposit, making both of them payable to him or his wife. Theodore Scherzinger died intestate. His wife claimed all of the property heretofore mentioned, as well as an old Ford automobile which was licensed in her name.

The appellants brought this suit to set aside the deed on the grounds of fraud and undue influence on the part of the appellees over the grantor, and lack of mental capacity on the part of the deceased on November 16th and thereafter. They sought also to have the money in the bank, the certificate of deposit, the automobile and other property declared to be the property of the deceased and for distribution under the statutes of descent and distribution. After the issues were joined the cause was referred to the commissioner for the taking of proof.

After the taking of proof the commissioner made his report which he summarized as follows:

"To summarize this matter, your Commissioner reports that he finds that there was no fraud or undue influence exercised upon the deceased, and that the deceased was mentally capable of transacting his business on November 16, 1938. Your commissioner further reports that the transfers of real property were, therefore, valid. Your Commissioner reports that there was no transfer of the title to the money in bank or the certificate of deposit, and that the same, therefore, belongs to the estate of Theodore Scherzinger, deceased. Your Commissioner further reports that Frances Scherzinger is the owner of the automobile in question."

The appellants filed exceptions to the report because the commissioner found that the automobile be-

longed to Mrs. Scherzinger; that the deed was valid; that the deceased did not lack mental capacity at the time he executed the deed; and that there was no fraud or undue influence exercised upon the deceased. The appellees filed exceptions because the commissioner found that there was no transfer of the title to the money in the checking account, or on time deposit from the deceased to his wife, and because he had held that the evidence of Theodoris Scherzinger Zinn, a daughter of Mrs. Scherzinger and the deceased, was incompetent. The chancellor prepared an opinion in which he set forth his reasons for approving the commissioner's report as to the automobile and the realty, and for setting aside that part of it relating to the money in the checking account and that on time deposit.

In urging reversal the appellants have cited numerous cases in support of their contentions of fraud and undue influence and the mental incapacity of the deceased at the time the deed was executed and at the time Mrs. Scherzinger's name was added to the checking account and the certificate of deposit. It is urged that the burden of proof as to the mental capacity of the deceased when the transactions took place was upon the appellees. It is urged also that the testimony of Mrs. Zinn was incompetent because she was testifying in her own interest.

We are convinced from our review of the record that the judgment of the chancellor should be affirmed. We have no hesitancy in saying that the disposition made by the deceased of his property seems to us to have been a natural one. He and Mrs. Scherzinger had lived together for approximately 38 years. She had made a home for him, and in addition to caring for their three children, she had helped to make a home for his three children by a former marriage. He left only a modest estate. Our examination of the record supports the finding of the commissioner that there was no fraud or undue influence on the part of the appellees over the deceased, and that he was not mentally incapacitated at the time the transactions complained of took place. He knew his physical condition, and that he did not have long to live. He had been prepared for death according to the rites of his church shortly before November 16th. Granting that the burden of proof was upon the appellees to refute the charges directed at the transactions in question, we think that they met fully this burden. As

we have said, it strikes us that the deceased made a natural distribution of his estate, and we find nothing in the record indicating fraud or undue influence on the part of the wife or any of the other appellees.

Furthermore, the proof as to the deceased's mental condition on November 16, 1938, and thereafter, is overwhelmingly in support of the conclusion that he was not mentally incapacitated. As to his mental condition we have the proof of two doctors who testified in response to hypothetical questions that he was incapacitated against that of two doctors who testified in response to such questions, as well as the more persuasive testimony of the doctor who attended him during his last illness, that he was not mentally incapacitated. His sister, the attorney who prepared the deed for him and Mrs. Zinn, also testified that he was not mentally incapacitated. The attending doctor testified that the deceased was given narcotics and that he was drowsy and slept some after taking them, but that he knew what he was doing 80% of the time.

In the case of Smith v. Gilligan's Adm'r, 276 Ky. 533, 124 S. W. (2d) 798, 799, it was pointed out that the testimony of a physician who had never seen the decedent given in answer to a hypothetical question was not entitled to any great weight as against the evidence of the physician who had attended the decedent from the beginning of her illness until the time of her death. It is pointed out in the Gilligan case also that the mere opportunity to exercise undue influence is not sufficient to establish the exercise thereof in obtaining a gift.

As noted, we have referred to the testimony of Mrs. Zinn, question as to the competency of which has been raised. While she was made a party defendant in the court below, we do not deem her to be such a party in interest as would prohibit her from testifying in this action under Section 606, Subsection 3 of the Civil Code of Practice. Nor do we think that the fact that she was made the beneficiary of an insurance policy for $500 taken out by her mother after the death of Theodore Scherzinger alters the case. That this witness manifested considerable interest in her mother is nothing more than natural. It appears to us that there is more basis for contending that she was testifying against her own interest, as far as the litigation before us is concerned, than she was in her own interest.

Mrs. Scherzinger testified that the automobile belonged to her. It was licensed in her name. It was shown, however, that the check given in payment of it was signed by the deceased. While the proof as to the ownership of the car, aside from the fact that it was licensed in the wife's name, is not as conclusive as that on other points in the case, we are disposed to and do follow the ruling of the chancellor on this point. Sherman's Ex'r v. Keller, 225 Ky. 25, 7 S. W. (2d) 496.

The appellants have cited cases from foreign jurisdictions in support of their contention that there was no transfer of the money from the husband to the wife by the adding of her name to the checking account and to the certificate of deposit. The appellees have cited the cases of Gray's Adm'r v. Dixon, 255 Ky. 239, 73 S. W. (2d) 6, and McCoy's Adm'r v. McCoy, 126 Ky. 783, 104 S. W. 1031, 31 Ky. Law Rep. 1189, wherein we have held that the delivery of a pass book has constituted delivery of the money in a bank as a gift causa mortis. In the case of Moore v. Shifflett, 187 Ky. 7, 216 S. W. 614, 616, a gift causa mortis is defined to be "a gift of personal property made by a person in expectation of death then imminent, and on an essential condition that the property shall belong fully to the donee in case donor dies, as anticipated, leaving the donee surviving him, if the gift is not in the meantime revoked, but not otherwise, 20 Cyc. 1228, Meriwether v. Morrison, 78 Ky. 572."

As to the intention of the deceased to give the money in the bank to Mrs. Scherzinger we have little doubt. He knew of his impending peril. He had already transferred his realty to his wife. We have the proof of the attorney who prepared the deed that he asked her about transferring the money in the bank. We have also the proof of Mrs. Zinn that the deceased asked her to talk with her sisters about leaving his property to his wife, as well as her testimony to the effect that Mrs. Scherzinger's name was added to the checking account card and to the certificate of deposit at his instigation and that he was giving her the money in the bank. As to the certificate of deposit Mrs. Zinn testified:

"A. I told him the bank wanted the certificate of deposit to have Mother's name added to it, he had Mother bring him the certificate of deposit and read it and wanted me to take the certificate of deposit

to the bank and I said I wasn't going to the bank, I didn't know when I was going, and he then handed it to Mother and said 'Mother, I am giving you this certificate of deposit, I want you to take it to the bank and have your name added.' "

In 7 Am. Jur., Banks, Section 433, page 305, it is said:

"Gift Causa Mortis.—In accordance with the established requisite as to gifts causa mortis generally, a gift causa mortis ensuing from a transaction in which the donor makes a deposit in an account in the name of himself and another, or in which the donor changes an existing account into such form, is not made out where the transaction was not effected in contemplation of death from present illness or some impending peril. However, it has been decided that where the holder of a certificate of deposit indorses thereon a direction to the bank to issue a new certificate payable to himself and wife, 'or to the survivor of them,' and delivers it to his wife during his last sickness, there is a valid gift causa mortis."

From what has been said it is clear that in the case before us there is no question as to the gift of the money in the two bank accounts being made to Mrs. Scherzinger by her husband in contemplation of death. Furthermore, it has been pointed out that the proof shows his intention to make such a gift. We think also that the circumstances heretofore reviewed show clearly that there was delivery of the money in the two accounts in the bank from the deceased to his wife. These conditions and circumstances are ample, in our opinion, to support the gift as a gift causa mortis, notwithstanding the appellants' contention that the deceased had the right to write checks on his bank account after the gift was made.

It follows, therefore, from what has been said, that the judgment of the lower court should be and it is affirmed.