## Williams, Guardian, et al. v. Reese, et al.

(Decided November 13, 1917.)

### Appeal from Todd Circuit Court.

1. Cancellation of Instruments—Deeds—Validity.—If a grantor at the time of making a conveyance has sufficient capacity to comprehend the nature and effect of the act, the conveyance is valid, and may not be set aside on the ground of mental incapacity of the grantor.

2. Cancellation of Instruments—Deeds—Undue Influence.—Undue influence which will invalidate a conveyance is such as to destroy free agency and to cause the grantor to do that which he would not otherwise do, but an appeal to the understanding and to reason ich do not destroy free agency is not undue influence.

3. Cancellation of Instruments—Deeds — Validity. — Evidence examined and found that the deed attacked was not executed between

persons occupying a confidential relation, nor was it obtained through undue influence, nor was the grantor mentally incapacitated to make it.

PETRIE & STANDARD for appellants.

JAMES R. MALLORY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In September, 1910, Sarah B. Reese, who was then 72 years of age, conveyed by deed to S. F. D. Reese a tract of land in Todd county, Kentucky, containing 114 acres for the consideration of "$2,000.00 and other valuable considerations."

About the first day of March, 1911, the grantor, Mrs. Sarah B. Reese, died, and on January 27, 1912, this suit was filed in the Todd circuit court by the appellant (plaintiff below), through her statutory guardian, against S. F. D. Reese and the other appellees, who were defendants below, seeking to cancel the deed executed by Mrs. Sarah B. Reese to the defendant, S. F. D. Reese, upon the ground that at the time it was made the grantor did not possess sufficient mental capacity to execute it, and that it was obtained through undue influence exercised upon her by the grantee and his co-defendants.

Defensive pleadings consisted of a denial of the allegations of the petition, and a counter-claim asked that the title of S. F. D. Reese be quieted and the cloud upon it produced by claims made by plaintiff be removed. Upon final submission the chancellor dismissed the petition of plaintiff and quieted the title of the defendant, S. F. D. Reese, and this appeal calls in question the correctness of that judgment.

Before entering into a discussion of the merits of the case a preliminary question concerning the proper revivor of the suit in this court should be disposed of. After the judgment below, and before the record was filed in this court the grantee in the deed died and a suggestion to that effect was made in this court and the suit was attempted to be revived as against his administrator. On May 29, 1917, in an opinion in this case reported in 176 Ky. page 21, it was determined that the revivor against the personal representative of the grantee was insufficient, as under the provisions of section 506 of the Civil Code a revivor against his real representatives should be made, and a rule was issued against the appellant to show cause why the appeal should not be dis-

missed for want of a proper revivor. A response to that rule has been filed, and it shows that the grantee, S. F. D. Reese, before his death and after the rendition of the judgment appealed from, conveyed the land in question to his co-defendants, the present appellees, and that necessarily he did not own the land at the time of his death and none of his real representatives could inherit it. As the response shows that the only persons now interested in the suit, as well as the title to the land, are parties to this appeal, we are of the opinion that the response is sufficient and the rule is therefore discharged.

Briefly addressing ourselves to the merits of the case, the record discloses that Asbury Reese, the husband of Sarah B. Reese, died about March 1, 1910, and in a suit to settle his estate considerable litigation arose because of the contention of the appellant here through her statutory guardian over the question of advancements that had been made by Asbury Reese to his children, the appellant being the only child of a deceased son, who was entitled to a one-seventh interest in the estate of Asbury Reese, as she is likewise entitled to a one-seventh interest in the estate of her grandmother, the deceased Sarah B. Reese. After this litigation, Mrs. Reese on several occasions expressed a desire to settle her estate and divide it up before her death, so as to avoid a repetition of the litigation through which her husband's estate had passed. She owned the tract of land in question, some bank stock, the interest which she derived from her husband's estate, and perhaps other property. She had made advancements out of her estate to some of her children more than to others, and her constantly expressed desire was to make her children share equally in her property, including her granddaughter, the plaintiff and appellee. With this end in view she expressed to some of her children, and to other witnesses who testified, her determination to sell the farm. S. F. D. Reese, to whom the deed was made, was a bachelor, and had lived a considerable portion of his life with Asbury Reese and wife. He himself was the owner of at least his share in his father's farm lying adjacent to that owned by Asbury Reese, and the latter with his children cultivated the two farms together, they being used very largely as though they were common property, and for which S. F. D. Reese does not appear to have made any specific charges in the way of rents. He had procured a license to practice law in 1891, and had endeavored in a way to follow that profession in Hopkinsville, Kentucky, until 1896, when, for some cause,

he abandoned it and moved upon the farm, never undertaking to prosecute his profession after that time.

The proof shows that upon some occasions Mrs. Sarah Reese would consult him about business transactions, but the overwhelming weight of the testimony shows that she was a woman of more than average independence of mind. Before marriage she had graduated at a noted female school at Murpheysboro, Tennessee, and was, no doubt, under the proof, a woman of unusual intelligence. There is not the slightest intimation in the entire record that S. F. D. Reese ever mentioned to his grantor the subject of purchasing the tract of land, but that, on the contrary, she mentioned the matter to him. Mrs. Reese appears to have been a woman of extreme fairness, and it is perfectly clear to us from the record that in 1890, when she purchased the farm in question, in some way S. F. D. Reese advanced a part of the consideration, amounting to between $500.00 and $650.00, and that Mrs. Reese always recognized her obligation to at some time discharge that indebtedness. The uncontroverted proof shows this, although there is testimony that she stated on occasions that she was the sole owner of the farm, which was literally true, as it had been conveyed to her alone. It is shown by the proof that when this indebtedness was taken into consideration, the interest on it, with the $2,000.00 mentioned in the deed, would make the total consideration at the time the conveyance was made something like $3,300.00, or fully as much as any witness says that the land was worth. Six witnesses in behalf of plaintiff testified that Mrs. Reese, some time before the execution of the deed, had sustained an accident whereby she was slightly crippled, but which impaired her activities for but a short while, and that after that they thought her mind was weakened correspondingly with her physical impairment. But the witness, Pitts Reese, a son of the decedent, and who gives the strongest testimony along the lines indicated, acknowledges that his mother, after the execution of the deed, made her will, in which she devised all of her undisposed-of property absolutely equally between her children and her granddaughter, the appellant. Furthermore, he says that on the very day of the execution of the deed, when he was present or about the premises, his mother endeavored to equalize the shares of her children in her property by giving to them bank stock, and perhaps dividing the $2,000.00 consideration mentioned in the deed, and in which division she gave to the witness $650.00, which he

accepted without questioning the mental capacity of his mother to thus divide her property. Other witnesses who testify for plaintiff as indicated saw the deceased but occasionally, and the record shows that she continued till death to do her household work and to engage in that line of conduct pursued by her throughout a long and useful life, which stamps her as an asset to her community and a jewel in her home. There is no circumstance testified to by any witness indicating mental weakness, nor is any conduct pointed out calculated to show that she possessed other than a normally rational mind.

As against this testimony, sixteen witnesses give it as their opinion that the grantor possessed a sound mind at and about the time she executed the deed, and continuously until the time of her death. Among these witnesses are Judge C. H. Bush, of the third circuit court judicial district in this state, the physician who attended her, and other witnesses who testify in an intelligent and impartial manner. This testimony is also supplemented by the fact hereinbefore referred to that the grantor wanted to guard against useless and expensive litigation over her estate by distributing it, or the great bulk of it, before she died, and the further fact of her undeniable anxiety to be fair and just to all of the objects of her bounty. A recitation in detail of the testimony of each witness would serve no useful purpose, either to the parties concerned or to the profession in general, and for that reason we decline to enter into it, satisfying ourselves with the statement that we do not have the slightest doubt of a fixed and determined purpose on the part of Mrs. Reese to dispose of her land in order to carry out her purposes hereinbefore referred to, and that she was amply competent mentally to do so.

It is insisted that she was unduly influenced to make the deed, and it is argued that because S. F. D. Reese at one time had license to practice law, and that he upon occasions would, after being requested, advise his sister-in-law upon business matters, that a confidential relation existed between the two sufficient to bring this case within the doctrine announced in the case of Shacklette, et al., v. Goodal, et al., 151 Ky. 20, in which the familiar rule is announced that the burden to show the fairness of a contract between a solicitor and client is upon the former because of the confidential relations existing between the parties. That rule is especially applicable where the element of inadequacy of consideration enters into the transaction, but the trouble with its application here is

that the proof fails to establish any confidential relation. There is not a single instance shown where S. F. D. Reese procured his sister-in-law to engage in any business transaction save and except that at her request he wrote her will and pointed out to her the place where she should sign it. It is not shown that he even gave her legal advice, and there is no intimation that she ever had any litigation of any character where she needed the services of an attorney. The law is that "If a person, at the time of making a conveyance, has sufficient capacity fully to comprehend the nature and effect of the act, the conveyance is valid." 22 Cyc. 1170. This rule is recognized by all the courts, including this one, as will be seen from the case of Wathen v. Skaggs, 161 Ky. 603, wherein mental incapacity sufficient to invalidate a deed is thus stated: "The rule is that to constitute mental incapacity invalidating his deed, the grantor must have been incapable of comprehending or understanding the subject of the contract, its nature and probable consequences."

Undue influence sufficient to invalidate a contract, as defined in 9 Cyc. 454, "consists of acts which, although not fraudulent, amount to an abuse of the power which circumstances have given to the will of one individual over that of another." It has many times been defined by this court as being influence "to such an extent as to destroy his free agency, and to cause him to do against his will what he would otherwise refuse to do, whether exerted at one time or another, directly or indirectly, if it (influence) so operates on his mind at the time he executed the paper. But any reasonable influence obtained by acts of kindness or by appeals to the feeling or understanding and not destroying free agency, is not undue influence." Watson's Exr. v. Watson, 137 Ky. 25; Wood v. Rigg, 152 Ky. 242; Zimlich v. Zimlich, 90 Ky. 657; Collier v. Dundon, 164 Ky. 345; Brent v. Fleming, 165 Ky. 356; and Meuth's Exr. v. Meuth, 157 Ky. 784. Even if there had been such a confidential relation shown in this case as to cast the burden upon the grantee to show the fairness of the transaction, that burden, under the proof, has been fully discharged.

The chancellor has found that there existed neither mental incapacity of the grantor, nor undue influence exercised upon her by the grantee or any of the defendants, and we think his finding not only sustained by the evidence, but it leaves no doubt in our mind as to the correctness of the court's judgment.

Wherefore, the judgment is affirmed.