## Belcher, et al. v. Belcher, et al.

(Decided October 23, 1923.)

### Appeal from Lawrence Circuit Court.

1. Deeds—Undue Influence and Fraud Held Not Sufficiently Shown. —In an action by heirs of one since deceased to set aside a deed, evidence held not to show undue influence or fraud.

2. Appeal and Error—Objections to Evidence Waived by Failure to Except.—Objections made to evidence were waived, where appellants did not take exceptions to the testimony and have the exceptions passed on by the chancellor.

3. Deeds—Parent May Convey Land to Son for Less than Value.— A father, who has sufficient intellect to understand the nature and effect of his act and is not the victim of fraud or undue influence, may give or sell his land for less than it is worth to a son, who has been his mainstay in the declining years of his life, and has stood by him when others under the same obligation have failed.

JOHN W. WOODS for appellants.

M. S. BURNS, WAUGH & HOWERTON and THEOBALD & THEOBALD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Issac Belcher owned a farm of 260 acres in Lawrence county. On September 25, 1918, he conveyed the farm to his son George. The consideration recited in the deed

was $4,000.00, of which $1,000.00 was paid in cash and three notes executed for the balance, "and the further consideration that second party (my son) has expended some considerable money in improving the hereinafter described land." The deed also contained the following provision:

"It is distinctly understood that Isaac Belcher is to have complete control of this land so long as he lives."

Isaac Belcher died in the month of October, 1922, survived by several sons, two daughters and some grandchildren.

This suit was brought by Eugene Belcher and the other heirs of Isaac Belcher to set aside the foregoing deed on the ground of mental incapacity, undue influence and fraud. On final hearing the chancellor denied the relief prayed for, and the plaintiffs appeal.

Isaac Belcher spent practically the whole of his life on the farm in question. After he became too old to do the manual labor he invited his son, Eugene, to live with him, but Eugene did not remain long as he preferred the life of a traveling salesman. He then tried his son, Dee, but he liked the life of a merchant better. After that he tried his son, Lon, but he seemed to have no aptitude for farming and preferred to give singing lessons, and a disagreement soon arose between him and his father. Isaac Belcher then sent for George, who lived some miles away, and on November 14, 1913, George and his family took up their abode with Isaac. George was a man of great strength and industry, and during the time that he lived with his father not only were better improvements placed on the farm, but its fertility was greatly increased. Several years before his death, Isaac Belcher executed a will, by which he devised his personal property to his daughters, and the farm to his sons, with the further provision that the sons should pay the daughters $200.00 each, but this will was destroyed on the day the deed to George was made. For a while there was a contract between George and his father, by which George was to have the use of the farm for five years after his father's death for a rental of $50.00 each to the other four boys, but this contract was destroyed.

The particular facts relied on by appellants are that Isaac Belcher was ninety years old when the deed was made. He was practically blind and very deaf. At that

time he was living with his son, George, who was not only his partner, but attended to practically all his business, and had authority to sign his checks. The farm itself, as shown by several witnesses, was worth at least $10,000.00. The consideration stated in the deed was not only inadequate, but was not true, as George did not expend any money in making improvements, and in fact did not pay the $1,000.00 cash consideration. Furthermore, Isaac Belcher had gotten it into his head that the other children intended to have him committed for lunacy, or to have a guardian appointed for him, and George was responsible for this belief.

It may be conceded that the foregoing facts, standing alone and unexplained, tend to substantiate the claim of appellants, but the case presents a different aspect when all the facts are considered. It was shown by a number of prominent men in the community, such as bankers, traders and others who had had business with him, that Isaac Belcher, though ninety years of age and almost blind and deaf, was a man of fine intellect and strong character; that up to the very last he not only made trades himself, but was consulted by George in other trades and always exercised the controlling voice in his household. Not only so, but those who were present when the deed was made say that Isaac Belcher not only had a clear idea of what he wanted done, but actually directed what should be done. The men who so deposed are among the outstanding citizens of the community. Indeed, the evidence on this phase of the case is so overwhelming that appellants practically abandoned the claim of mental incapacity, and are now relying solely on undue influence and fraud. But strength of mind and great force of character go far in rebutting any presumption of undue influence or fraud. The fraud relied on is that the cash consideration was not paid. The basis of this contention is that before the check for $1,000.00 was deposited to Isaac Belcher's credit, George drew in his own favor two checks on his father's account, which aggregated $1,000.00, and deposited them to his own credit. The explanation given of the transaction by George is that the two checks were drawn to reimburse him for funds which he had theretofore expended out of his private account for the benefit of the partnership. While this evidence was objected to, appellants did not except to this testimony, and have the exceptions passed on by the chancellor. Not having done this, the exceptions were waived,

Keeton v. Mahan, 177 Ky. 85, 197 S. W. 519, and we are not at liberty to consider the evidence. Looking at the question in the light of George's explanation and character, we are not prepared to say that George deliberately tried to defraud his father. It is doubtless true that the land was worth more than George paid for it, but a father who has sufficient intellect to understand the nature and effect of his act, and is not the victim of fraud or undue influence, may give his land or sell it for less than it is worth to a son who had been his mainstay in the declining years of his life, and had stood by him when others under the same obligation had failed him. In a case of this kind much depends on the character of the parties and the credibility of the witnesses, and though the law looks with suspicion upon a deed made under the circumstances here presented, and places the burden of proving the fairness of the transaction upon the grantee, we are not prepared to say that the chancellor erred in reaching the conclusion that the burden was fairly sustained.

Judgment affirmed.