## Masters et al. v. Comley et al.

(Decided June 24, 1932.)

ROSS & ROSS and E. C. McDOUGLE for appellants.

W. J. BAXTER, CHENAULT & JACKSON and W. K. PRICE for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

John T. Collins, a resident of Madison county, died testate on May 1, 1930. Until shortly before his death he owned two tracts of land in Madison county, one consisting of 74 acres and one, upon which he resided, consisting of 22½ acres. He also owned about $2,000 of personal property. On April 29, just two days before his death, he conveyed the 22½-acre tract to his niece, Maude Masters, and her husband, Forest Masters. John T. Collins' only heirs at law at the time of his death were his three grandchildren, Russell Comley, the son of a deceased daughter, and Willie Estes and Ray Estes, children of another deceased daughter. Russell Comley was 23 years of age and the Estes children were 12 and 14 years of age, respectively.

Russell Comley and the Estes children, by their statutory guardian, brought this action to set aside the deed from their grandfather to Maude Masters and her husband on the ground that John T. Collins was without mental capacity to execute it, and also on the ground that it was procured by undue influence.

The defendants moved for an issue out of chancery to try the issues of fact, and the plaintiffs consented that the motion be sustained. Two questions were submitted to the jury. The first was, in substance, Did John T. Collins have sufficient mental capacity to convey the real estate? and, second, Was the deed procured by undue influence? The jury returned a verdict in which they answered "No" to both questions. Thereupon the chan-

cellor entered a judgment canceling and setting aside the deed, and the defendants have appealed. Whether or not there was sufficient evidence to authorize the judgment is the only problem presented for solution.

John T. Collins was 77 years of age when he died, and until April 16, 1930, was a man of strong mentality and apparently in good health. He became ill on April 16, was soon confined to his bed, and died on May 1. His grandson, Russell Comley, lived about ten miles from the John T. Collins home, but visited his grandfather from time to time. The Estes children lived with their father on John T. Collins' farm for several years prior to January 1, 1930, when their father moved to another farm in the neighborhood. The relations between Collins and his grandchildren were always friendly. In 1921, after the death of his two daughters, he executed a will in which he left all of his property to his three grandchildren. His niece, Maude Masters, and her husband, Forest Masters, lived about one-half mile from the Collins home, and were frequent visitors therein. On the day he was taken ill he told his brother, Mitchell Collins, the father of Maude Masters, that he wanted Maude Masters and her husband to move into his home and take care of him, and he asked Mitchell Collins to so notify Maude Masters. She and her husband on that day moved into Mr. Collins' home and remained there until his death.

Appellants introduced evidence tending to show that a few days after they moved into the Collins home the decedent suggested that he would convey to them the home place if they would agree to live with him and take care of him during the remainder of his life. They finally consented, and on April 29 Jasper Wylie, a cousin of Maude Masters, prepared the deed. John T. Collins made his mark, which was witnessed by Wylie. Theretofore Collins had always signed his name. On the same day Wylie prepared what purported to be a codicil to Collins' will, and by which Collins bequeathed personal property of the value of about $2,000 to Maude Masters. A. B. Clark, a neighbor, was called in to witness the will. He testified that when he came into the room Collins was lying in bed on his back asleep. He was aroused, and a pen placed in his hand, and he signed the will by making his mark and immediately fell asleep. Clark stated that in his opinion he had sufficient mind and

memory at the time to make a deed, but he based his opinion on the fact that the decedent said nothing while he was there that would indicate he lacked mental capacity. Mr. and Mrs. Hubert Teater, lifelong friends and neighbors of the decedent, were in his home a few days before the deed was executed, and both testified that he did not then have sufficient mental capacity to make a deed. The decedent did not talk to them while they were in the room, but, as they were leaving, he asked his brother, Mitchell Collins, who they were. Two physicians who saw the decedent during his illness testified that he had sufficient mental capacity to make a deed, but Dr. N. A. Bailey was introduced as an expert medical witness, and, in answer to the hypothetical question, stated that in his opinion the decedent did not have such mental capacity on April 29, 1930. Dr. M. M. Robinson testified to the same effect. There is considerable evidence tending to show that the decedent was in a comatose condition for several days prior to his death and oblivious of his surroundings. It is clear from the record that he became seriously ill on April 16, 1930, and grew steadily worse until he died on May 1, and that on April 29, 1930, the day the deed was executed, he was in a dying condition. There was ample evidence to warrant the finding of the jury and the judgment of the chancellor that John T. Collins was mentally unable to comprehend the subject of the contract, its nature and probable consequences.

There is a presumption that the grantor of lands was possessed of capacity to convey, but, where the grantee sustains a confidential relation to the grantor, such as custodian or nurse, the burden is upon him to establish the grantor's mental competency. Gregg v. Hedges' Guardian, 227 Ky. 268, 12 S. W. (2d) 854; Briscoe v. Briscoe, 225 Ky. 804, 10 S. W. (2d) 294; Sherman's Executor v. Keller, 225 Ky. 25, 7 S. W. (2d) 496; Isaacs v. Isaacs, 206 Ky. 540, 267 S. W. 1104. Not only did appellants fail to sustain this burden, but the preponderance of the evidence was against them.

Judgment affirmed.