## Chiles et al. v. Major et al.

(Decided Dec. 15, 1936.)

TRIMBLE & TRIMBLE for appellants.

HUGH W. LINTON for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

On June 15, 1932, Mrs. Molly Major executed and delivered to her daughter, Jimmie Ruth Chiles, a deed for a house and lot in the city of Hopkinsville; the recited consideration being "love and affection * * * and other good and valuable considerations * * *." The deed contained the following reservation: "provided, however, that the party of the first part hereby reserves the right to use and occupy said lot and ground and the house situated thereon as a home during her lifetime and to exercise full and complete control over and management of said property during her lifetime."

On June 30, 1932, John M. Major and six other children of the grantor, and brothers and sisters of the grantee, instituted this equitable action against Mrs. Chiles and her husband, asking that the deed be canceled and held null and void. The grounds of attack on the deed were: First, that the house and lot were purchased with proceeds of the estate of her deceased husband, who died many years ago testate, and Mrs. Major owned a life interest in the house and lot and had no right to convey it because under the will of her husband she only took a life estate; and, second, that the grantor was over 80 years of age and was overpersuaded, overreached, and by improper influence and fraud, induced to execute the deed which she did not

intend to sign and which she was unwilling should remain as a valid conveyance by her.

By an amended petition Mrs. Molly Major was made a party plaintiff and adopted the allegations of the original petition and prayed the relief sought therein.

By answer the defendant in a first paragraph traversed the allegations of the petition, and in a second paragraph set up the provisions of the will of her father J. A. Major, and alleged that under the provisions thereof, the widow, Mrs. Molly Major, took a fee-simple title in his estate; that when her youngest child became 21 years of age there was a mutual agreement between the widow and children for a division of the balance of such estate, that the interest of Mrs. Major was set aside to be hers absolutely, and when she invested funds so derived from the estate in the property in controversy it became hers in fee simple; and that the conveyance referred to in the petition was freely and voluntarily made by her and for a valuable consideration. The affirmative allegations of the answer were controverted by her reply.

Mrs. Chiles testified that as a part of the consideration for the conveyance to her she transferred and assigned to her mother a note for $1,373.75 which G. M. Major and wife executed and delivered to her on January 8, 1918; and there was also executed and delivered to her mother as part of the consideration of the conveyance a note for $356, but as shown by a memorandum on the note, $118 represented the principal and interest on an old note which Mrs. Chiles owed her mother.

By a second amended petition filed after these notes were introduced in evidence, plaintiffs alleged that they had no knowledge that defendant claimed the notes were any part of the consideration for the deed until she so testified. They alleged that the note for $1,373.75 had never been transferred or delivered to Mrs. Major, was never in her possession, and was not a part of the transaction, but that inasmuch as defendant claimed the note was part of the consideration for the deed, they disavowed any claim thereto but denied that Mrs. Major had any interest whatsoever in the note and they waived any claim to the note and tendered whatever interest therein the court might hold Mrs. Major had, back to the defendant.

By answer defendant traversed the allegations of the second amended petition.

On final hearing it was found by the chancellor that Mrs. Major, on account of age and mental infirmities at the time the deed in controversy was executed, was not mentally capable to execute a deed, and it was adjudged that the deed be canceled, set aside, and held for nought. It was further adjudged that the note for $1,373.78 executed January 8, 1918, by G. M. Major and wife to Ruth Major (Chiles), and the note dated June 16, 1932, payable to Mrs. Major for the sum of $356 signed by Ruth Chiles, be restored and returned to her with all right she had in same when executed, and that plaintiffs recover their costs, and defendants are appealing.

While, as will be noted from the chancellor's finding and judgment, the sole ground on which the deed was set aside was the age and physical and mental inability of the grantor, counsel for appellees are most earnestly contending that the house and lot was bought and paid for by the widow out of money in which she had only a life estate, and that although an absolute title was inadvertently conveyed to her by the deed, she in fact took a life estate with remainder to her children, and that in the circumstances a constructive trust was created.

J. A. Major executed his will on September 23, 1897, and within a short time thereafter died. He and Mrs. Major had been married for about twenty years and nine children had been born to them, some of whom must have been very young at the time of his death. He provided in substance in his will that his wife should have all of the estate, real and personal, to possess, enjoy, manage, and control for her support and the support and education of their children. It was further provided that when the youngest child should become twenty-one years of age, the wife, if living, should have one-third of the land for her natural life and the balance of the proceeds to be divided among the children then living, and if the land could not be divided or the children could not agree about the division or sale, the wife, as executor, was authorized to sell and convey the children's portion and divide the proceeds equally among them. It was further provided that when the youngest child attained the age of twenty-one, the wife should take one-half of the personal property and one-

half would be divided equally among the children. In another paragraph of the will it was provided that at the death of the wife, if before the youngest child became twenty-one years old, the property would be equally divided among the children then living, or if she should die after the youngest child became twenty-one years old, her one-third of the land and whatever personalty she might have derived from the estate should be divided equally among the children.

As we view the matter in the light of the evidence, it is not necessary to determine the controversy between the respective parties concerning the nature of the estate Mrs. Molly Major took under the will or any question of constructive trust. It appears in evidence that when Mrs. Chiles, the youngest child, reached the age of twenty-one, there was an agreement between the mother and the children whereby the land of the testator was sold and the estate divided among the widow and the nine children. It does not appear whether under the agreement Mrs. Major took her part absolutely, but Mrs. Chiles contends she did and the evidence as a whole, and the natural and reasonable inferences arising therefrom so indicate.

Appellees contend that Mrs. Major put all the money derived from the estate into the house and lot in controversy, and there is some evidence that she paid $2,500 for it, and nothing to indicate that she paid more. The only mention of a money consideration in the deed is $1,200 evidenced by a note. It does not appear in the record how much was realized from the sale of J. A. Major's land, but the evidence shows that each of the nine children received approximately $1,400 in the division of the estate, or an aggregate of over $12,000. It will therefore be seen that the widow received a comparatively small portion of the proceeds. Appellees testified that the mother sought and relied upon the advice of two of her sons in all business transactions and that they looked after her business affairs. The deed for the house and lot in controversy was made to her in February, 1917, and conveyed a fee-simple title. The sons who advised the mother in all her business transactions must have known the character of the deed that was made to her, and it was allowed to stand of record without any question for more than fifteen years and until this action was filed. The evidence signally fails

to sustain appellees' contention that Mrs. Major did not take a fee-simple title to the house and lot in controversy.

There is likewise a total absence of evidence to support the allegations that Mrs. Major was overreached or that appellant exercised or attempted to exercise undue influence or persuasion to induce her to make the conveyance to Mrs. Chiles. In fact, Mrs. Major herself testified that the deed was not mentioned or discussed between her and Mrs. Chiles, and one of the appellees, a sister of Mrs. Chiles, in testifying concerning transactions of her mother, stated, "Ruth has never done anything wrong."

Undue influence will not be presumed and cannot be established by evidence merely showing opportunity for its exercise; but there must be evidence, direct or circumstantial, of substantial and relative consequences to establish it. Childers' Ex'x v. Cartwright, 136 Ky. 498, 124 S. W. 802; Cecil's Ex'rs v. Anhier, 176 Ky. 198, 195 S. W. 837; Langford's Ex'r v. Miles, 189 Ky. 515, 225 S. W. 246; Henson v. Jones, 247 Ky. 465, 57 S. W. (2d) 498.

Coming to the question of mental incapacity, we find that apart from appellees, only one witness, Mrs. E. H. Hester, undertook to testify that Mrs. Major did not have mental capacity sufficient to make a deed or to understand business transactions in April, May, or June, 1932. This witness stated that she had seen Mrs. Major often for years and gave as her opinion that at the time mentioned she was not capable of understanding a business transaction. She based her conclusion principally on the fact that Mrs. Major's memory was not good, and that in talking she did not get things the same way every time. Appellees all voiced the same opinion, and their evidence on which their opinions were based was to the effect that for some years prior to the making of the deed, Mrs. Major had been in poor health, was easily confused and disturbed, and often could not tell about the same thing twice in the same way.

It appears in evidence that when J. A. Major's estate was divided, Mrs. Chiles lent practically all her part of the proceeds to her brother G. M. Major to assist him in paying for a farm and took a note which she claims to have assigned to her mother as part of the

consideration for the house and lot. She testified that she did this on the advice of her mother. He was only able to pay her at intervals a part of the interest in the way of butter, eggs, and other produce. As appears from the evidence, G. M. Major lost his health, suffered impairment of mind, and was for a time kept in some institution. Mrs. Major made a will devising to him about $2,000. Mrs. Chiles testified that when her mother decided to make the will she called for the note which G. M. Major had executed to Mrs. Chiles, stating that he would be unable to pay it, and by making the will she (Mrs. Chiles) would get her part and her brother George would have a home. Some significance might be given to the fact that at the time the will was made the bequest was approximately equal to the note with accrued interest. Shortly after the death of G. M. Major and in the latter part of May or the first part of June, 1932, this will was burned at the home of Mrs. Florence Pyle, a daughter of Mrs. Major. Another daughter, Mrs. Ernest Pyle, was also present when the will was burned. One of these daughters was asked the question: "In May 1932 your mother concluded that after the death of your brother she did not desire that will to take effect?" To which she replied: "Yes and the children thought so to."

While we would not impugn any improper motives to any of the parties, it is quite apparent that these daughters were active in procuring the will and seeing that it was burned. They also testified that the mother seemed to understand the substance and nature of the will. Concerning the deed they testified that after it was made their mother did not seem to understand what she had done; that because of a slight stroke of paralysis and ill health she did not have mind enough to understand business transactions. Apparently, though, some of them had her read her husband's will after the deed was made and testified that she stated after reading it that she had no right to deed the property.

A number of disinterested witnesses testified for appellants. Some of them were related to her but were related in the same degree to her brothers and sisters. They were people who had known and been intimately associated with Mrs. Major for years, and their evidence is to the effect that at all times they had known her and including May and June, 1932, she was a woman of good

mind and memory with a strong will and could not be easily influenced. Included in this list of witnesses was a trained nurse, who testified that she had often nursed persons whose minds were affected. M. C. Forbes, a prominent business man of Hopkinsville and a brother-in-law of Mrs. Major, testified that she called him on the telephone telling him she wanted to see him, and when he went to her home she consulted with him about making the deed to Mrs. Chiles and asked him if she could retain a life estate in the property. He could not recall all that was said, but testified that some mention was made of a note that G. M. Major had made to Mrs. Chiles; and he further testified that Mrs. Major seemed to understand what she was talking about.

It is difficult to harmonize the evidence of appellees that their mother was incapable of understanding this business transaction and did not have mental capacity to make the deed with their evidence that a few days before the deed was made, she understood the nature of the will she had made in favor of her deceased son and desired to destroy it, and that a few days after the deed had been made she apparently comprehended and understood the nature and effect of her husband's will.

The deposition of Mrs. Major was taken in behalf of appellees, and while she indicated that she did not know or understand fully what she was doing, her evidence discloses that she is a woman of intelligence and that she had a good mind, and memory, understood about her husband's will and the division of the property between herself and the children, how she acquired the money that was put into the house and lot, and about other business matters.

Counsel for appellees cite authorities to the effect that courts closely scrutinize transactions of this character between persons sustaining confidential relations, and especially so where one of the parties is old or infirm, and argue that the burden was upon appellants to show that the deed was freely and voluntarily entered into and that the grantor was mentally competent to understand the nature and effect of the transaction.

In Wathens v. Skaggs et al., 161 Ky. 600, 171 S. W. 193, 195, it is said:

"The rule is that, to constitute mental incapacity invalidating his deed, the grantor must have been

incapable of comprehending or understanding the subject of the contract, its nature and probable consequences. If he has sufficient mental capacity to know and understand the nature, meaning, and effect of his act, then mere weakness of intellect will not invalidate his conveyance, unless coupled with inadequacy of consideration, undue influence, or other circumstances of inequitable nature. Bevins v. Lowe, 159 Ky. 439, 167 S. W. 422.''

See, also, Jones v. Stamps, 194 Ky. 377, 238 S. W. 762; Williams v. Reese, 177 Ky. 679, 198 S. W. 27; Lewis v. Lewis, 224 Ky. 18, 4 S. W. (2d) 1106; Risner v. Risner, 261 Ky. 359, 87 S. W. (2d) 970.

In the absence of fraud, undue influence, or some other circumstance of inequitable nature, a person may dispose of his property as he pleases and may give it to a near relative or other person or sell it for less than it is worth. Belcher v. Belcher, 202 Ky. 104, 259 S. W. 54.

Without going into the question of the value of the note of G. M. Major's assigned by Mrs. Chiles to her mother or the adequacy of the consideration for the conveyance, and with due deference to the opinion of the chancellor, it clearly appears from the record as a whole, and we are constrained to hold, that if in the circumstances the burden was upon appellant to establish that Mrs. Major did have mental capacity to know and understand the nature and effect of her deed, the burden has been fully met.

Wherefore the judgment is reversed, with directions to enter judgment in conformity with this opinion.