## Newman v. Hall et al.
## Commonwealth, for Use and Benefit of Newman, et al. v. Hall's Adm'r et al.
## Hall's Ex'r et al. v. Hall et al.

March 24, 1939.

H. C. FAULKNER and FAULKNER & FAULKNER, attorneys for appellant Newman; MURRAY L. BROWN and BERT T. COMBS for appellants, Lena Hall's Ex'r and others.

H. H. SMITH, D. G. BOLEYN and COMBS & COMBS for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing, etc.

Richard Hall, a citizen and resident of Knott County, Kentucky, died intestate on November 1, 1929. The record is not clear as to his age but shows with reasonable certainty that he was nearing 80 at the time of his death. He was survived by one son, David Hall, one daughter, Merica Newman, and 4 grandchildren, Diamond Waddle, Lulu Hall, Clara Johnson and Nancy Caudill, children of his deceased daughter, Frankie Waddle, as his only heirs at law.

On November 11, 1929, David Hall lodged and caused to be recorded in the county court clerk's office in Knott county what purported to be two deeds from Richard Hall to him for 2 tracts of land comprising the entire landed estate of the grantor. While the deeds do not so show the evidence indicates that the combined acreage of the tracts conveyed is from 2,500 to 3,000 acres. David Hall was appointed and duly qualified as administrator of his father's estate. On November 5, 1930, Merica Newman instituted an action in equity against David Hall making Diamond Waddle and the other children of her deceased sister, Frankie Waddle, and Ernest Hall, husband of one of the daughters of Frankie Waddle, parties defendant, seeking to have the two deeds set aside, cancelled, and held for nought, and later, by amended petitions, made George Hall, Lawrence Hall and others as will be hereinafter referred to, parties defendant.

As grounds for setting aside the deeds she alleged in her petitions as amended in substance (1) that the deeds were never actually signed or acknowledged by Richard Hall but that pursuant to and in furtherance of a conspiracy entered into between David Hall, Lawrence Hall and George Hall, the name of Richard Hall was affixed to the deeds after his death and the purported certificates of acknowledgment made; (2) that if the deeds were made at the direction of Richard Hall in his lifetime they were procured by fraud and undue influence of David Hall aided and abetted by his coconspirators, George and Lawrence Hall, at a time when decedent was old and ill and so weakened and enfeebled in mind and body as not to know the significance or effects of his acts; (3) that if the deeds were actually made during the life of Richard Hall and at his direction, they were void because Lawrence Hall who purported to take the acknowledgment thereto was not at the time deputy county court clerk of Knott

county or authorized to take such acknowledgment; that he had theretofore been deputy county court clerk of that county but later and before the acknowledgment was claimed to have been taken he had been appointed and had qualified as deputy sheriff of the county thereby vacating his office as deputy clerk. She further alleged in effect that the deeds were never signed or acknowledged by Richard Hall and that the certificates of acknowledgment were false and untrue; that after the death of Richard Hall, Diamond Waddle and his sisters instituted actions in the Knott circuit court against David Hall in which actions she was made a party defendant, the purpose of the actions being to have the two deeds above referred to set aside. She alleged that she was not before the court in those actions by summons or otherwise but that her brother through fraud and deceit procured her to file an answer and disclaimers to the effect that she was not an interested party and did not claim any land described in the petition and that she disclaimed all interest whatsoever in any and all of the land described therein and asked that she be dismissed from the action as party defendant; that she had every reason to believe that the deeds set out and described in the petition were made, signed, executed and delivered by her father, Richard Hall, of his own free will and at a time when he was fully capable of making, signing, acknowledging and delivering same. She further alleged that no order or judgment was rendered in the consolidated actions with respect to her interests, but orders were entered in each of the actions filing the two papers which her brother had procured her to sign which purported to be her answer and disclaimer although no judgment or order was entered dismissing the action as to her but only a judgment entered dismissing the cases on motion of the plaintiffs as settled between the parties plaintiff and the defendant, David Hall. She set out at length the final order entered in the consolidated actions which recited in substance that David Hall and his wife had conveyed to plaintiffs a portion of the land in controversy in full settlement of the litigation and settlement in full of any claims plaintiffs had or might have in either the personal or real estate of Richard Hall, deceased, and that the consolidated cases be dismissed settled.

She asked that if David Hall contended or that if

it should be adjudged or held that because of that litigation or any steps or orders taken therein her interest in the land was affected, that the paragraph of her petition with reference thereto be treated as her petition for a new trial in those actions and that the judgment, orders, etc., insofar as they affected her interests be set aside and held for nought as to her and that she be allowed to withdraw the two purported answers and left free to prosecute her claims to the lands in controversy as set out in the other paragraphs of the petition.

At the same time she filed another action against David Hall, as administrator of Richard Hall, the sureties on his bond, as such, and other parties, alleging that large sums of money and other personal property had come into his hands as administrator and for which he had failed and refused to account; and further alleged in her petition as amended in substance that David Hall was claiming that decedent had given him money and other personal property; that such gifts were in fact not made or if they were made, they were procured to be made through fraud, etc., on the part of David Hall and at a time when her father was so weakened, mentally and physically, that he did not know or appreciate the purport, nature and effect of his acts.

By answer, counterclaim, etc., the defendant, David Hall, denied the material allegations of the petition and set up the proceedings, the pleadings of the plaintiff, the judgment, etc., in the consolidated action of Diamond Waddle and others against David Hall in estoppel and in bar to plaintiff's right of recovery and further alleged in substance that no personal property came into his hands as administrator except two or three notes for small sums, not sufficient to pay burial expenses of decedent.

By amended petitions plaintiff made the Kentucky West Virginia Gas Co., and Lena Hall, mother of defendants Lawrence Hall and Ernest Hall and widow of Joe Hall, deceased brother of Richard Hall, parties defendant alleging that the former had or was claiming an oil and gas lease on some of the lands in controversy and was paying royalties from oil and gas wells to David Hall and Lena Hall but that the payments were in fact being made for the benefit of David Hall and he was receiving all of same and she asked that the company and defendants be required to ac-

count to her for all royalties paid to the extent of her interests in the land.

The Kentucky West Virginia Gas Company filed answer, counter-claim and cross-petition in which as amended it alleged in substance that it was the owner of an oil and gas lease made by Richard Hall, Joe Hall and Lena Hall, his wife, on the land referred to in the pleading and had paid royalties to David Hall and to Lena Hall, individually and as agent for the children of herself and her deceased husband. It further alleged that it had filed an action in which David Hall and the widow and heirs of Joe Hall were made parties defendant and asked to set up their respective claims to the royalties; that it had acquired knowledge of and relied on that disclaimer filed by Merica Newman in the suits of Diamond Waddle, et al., v. David Hall, that she was claiming no interest in the land and it pleaded that as to it she was barred and estopped from claiming royalties by reason of such disclaimer.

The actions were consolidated and on final hearing it was adjudged by the chancellor that the petitions of Merica Newman as amended in each of the actions be dismissed and that she take nothing thereby; that David Hall was the sole owner of all the land described in the deeds referred to in the petitions except so much thereof as he had conveyed to the heirs of Frankie Waddle; that in his lifetime Richard Hall gave to his son two certificates of deposit held by Richard Hall on the Bank of Wayland, Kentucky, for the sums of $4,200 each and also gave to David Hall a check on the account of Richard Hall in that bank for $703.59, and also certain tangible and intangible personal property and thereby passed title to same to David Hall and he was and is the owner thereof; that David Hall was entitled to receive and own in his own right all the rents and royalties paid him by the Kentucky-West Virginia Gas Company subsequent to the death of Richard Hall by virtue of the lease of Richard and Joe Hall to the company; that as to the inter-pleader action of the Kentucky-West Virginia Gas Company against Lena Hall and others, David Hall was entitled to receive in his own right all rents and royalties due and becoming due under and by virtue of the lease made by Richard Hall and Joe Hall to R. J. Graf, trustee, and predecessor in title of the gas company on lands covered by lease; that written exceptions of the plaintiff to deposition of

defendant be sustained and the written exceptions of defendant to the deposition of Merica Newman be overruled.

Plaintiff is appealing from so much of the judgment as dismissed her petitions and adjudged that she had no interest in the landed or personal estate of her father; and the executor of Lena Hall who died after the actions were instituted and the heirs of Joe Hall are appealing from so much of the judgment as held that David Hall was the owner of all the lands described in the deeds and entitled to all royalties from the oil and gas lease; and are claiming that a part of the lands were jointly owned by Richard and Joe Hall and that they inherited the interest of Joe Hall in such land.

The entire record contains something like 3,500 pages, some hundreds of which are made up of pleadings. In our recital we have only attempted to set out the main issues and may later refer more specifically to some of the allegations. For convenience we shall refer to David Hall as appellee. It will also be impossible to go into detail concerning the evidence or do more than generalize. The evidence shows that before his health became impaired Richard Hall was a man of strong character and personality, mentally alert and possessed of unusually good business judgment although uneducated and unable to read and write. So far as the record discloses he acquired by his own efforts large and valuable estate and it is asserted in brief for appellant, Merica Newman, that his estate was worth over $100,000. While we have not attempted to sum up the evidence to determine the correctness of that claim, the record does disclose beyond question that a distribution of his estate under our laws of descent and distribution would have left all his heirs in very comfortable circumstances. Richard Hall's wife died many years before he did. David Hall lived with his father until his marriage and thereafter he and his wife and the children born to them lived with him until his death. Frankie Waddle, the daughter of deceased, died when her children were very young and he took them into his home and reared and educated them. For some time after her marriage Merica Newman and her husband lived on land of her father but many years before his death and because of lung trouble she and her husband and children moved to Oregon and drifted from place to place in the far west but met with little success so

far as the accumulation of wealth was concerned. The father had visited her once or twice in the west and she had also paid a few visits to him. He knew the circumstances and conditions of his daughter's family and the evidence indicates that at times he aided them financially. The evidence shows conclusively that he had an affectionate and generous regard for his two children and his grandchildren and that he indicated to them and to others that he had plenty for all and expected all of them to share in his estate. About 2 years before his death, kidney trouble, either Bright's disease or Diabetes, the doctors not being certain as to which, began to manifest itself and gradually undermined his health. What is spoken of as his last illness was of about 3 months duration although he was not confined to his bed until 2 or 3 weeks before his death. In the earlier part of his illness he would at times walk about the house and premises and transacted some business. The evidence for appellant indicates that he was speechless for 6 or 7 days before his death and was in a state of coma the last few days. While the date was not inserted in the deeds in controversy David Hall, Lawrence Hall and George Hall testified they were made on September 20, 1929. The certificates of acknowledgment shows they were acknowledged as of that date, and both were signed by mark, witnessed by appellee and by George Hall and the acknowledgment taken by Lawrence Hall as deputy court clerk. While exceptions were sustained to most if not all the evidence of these witnesses concerning this transaction, their evidence is to the effect that the deeds were made at the request and instance of Richard Hall and that at the time his mind was clear and he was capable of fully understanding and doing what he wanted to do. A number of witnesses testified that Richard Hall had said to them that he expected to give David Hall all he had. The evidence shows that the relationship between Richard and Joe Hall and their sons was very cordial and intimate; that Joe and Richard Hall traded together and for reasons unnecessary to discuss Richard Hall carried a savings account of $8,400 in the Wayland Bank in the name of Joe Hall. Sometime about 10 months or a year before his death Richard Hall had this account transferred to his own name, and it is claimed that he transferred or caused $4,200 to be transferred to David Hall but retained a time deposit certificate for $4,200. It is further claimed by appellee

that about 4 days before the death of his father the latter assigned to him the $4,200 time certificate in the presence of Lawrence and George Hall and that at the direction of deceased he, appellee, signed the name of deceased by him in blank to be made out for all the money deceased had in his checking account in the bank of Wayland. This check was filled in by some clerk or official in the bank for $703.59 the full amount to the credit of Richard Hall on his checking account. Appellee claims that his father gave him these funds and all his personal estate and effects other than the two or three small notes hereinbefore referred to. Appellee was not certain about the date the time certificate was transferred to him and the check drawn to cover the amount of the checking account of decedent but the check as shown by the record was dated on October 31, the day before the death of Richard Hall and was paid on the day of his death. The evidence of a number of witnesses including some physicians who attended deceased in his last illness tends to show that at the time it is alleged he made the deeds he was mentally alert, active, capable of transacting business and understanding the nature and effect of his acts; however, the attending physicians are not very clear concerning his mental condition during the last few days of his life, but they do state that he finally went into a state of coma. The evidence shows that until he was incapacitated by disease, Richard Hall continued to exercise personal control in the conduct of his business affairs and relied solely upon his own judgment and faculties in matters pertaining thereto.

Summing up, the evidence presents this situation, Richard Hall had acquired an estate amply sufficient to make adequate provisions for all the natural objects of his bounty. He loved both his children and grandchildren and was affectionate and generous in his disposition toward them and the record reveals no substantial reason why he should favor one over another, yet, after advanced in years and stricken with a fatal malady that invariably undermines and impairs the mental faculties as well as physical strength and energy, he is alleged to have entered into a transaction by which he gave his entire estate to appellee. He had already done more for him than for any of the other heirs, especially the daughter, although she was in greater need of his help and bounty than was appellee. Therefore it is at once apparent that this was unnatu-

ral disposition of his property. The transactions were attended with a secrecy that would naturally give rise to doubt and suspicion since they were witnessed and known only to appellee and two nephews of deceased whom the record discloses were in an entire accord and sympathy with him. If Richard Hall wanted to dispose of his property as he did, there is no good reason why the transaction should have been attended with any secrecy or circumstances that would necessarily give rise to question and doubt concerning the bona fides of the transactions. If he was the man of intelligence and good business judgment, as the evidence shows that he was when in normal health, he would have known and appreciated that the execution of the deeds under the circumstances shown would becloud the transactions with suspicion and constitute a strong ground for attack upon them. As appears from the record Lawrence Hall was not in fact a deputy county court clerk and this fact no doubt would have been known to Richard Hall if he was possessed of his natural and normal mental faculties. The natural thing for a man of his business qualities and character to do would be to call in disinterested men of unquestioned integrity and reputation to witness such important transactions. The evidence concerning the deeds alone and all the suspicious circumstances and conditions attending their alleged execution and acknowledgment affords substantial and ample grounds for setting them aside. If any doubt remained concerning the correctness of that conclusion it would be entirely dispelled when evidence concerning the deeds is considered in connection with the later transaction whereby it was claimed that Richard Hall divested himself of all his estate even to the last cent that he had in bank. Appellee was indefinite and uncertain as to when this latter transaction occurred but said that it was about 4 days before his father's death. The evidence is persuasive if not convincing that even at that time his father was mentally incapable of transacting business; but the best evidence as to when this transaction occurred is the check itself which bears date October 31, the day before Richard Hall died. It was quite a distance from the home of Richard Hall to the bank upon which the check was drawn and yet it was presented and paid on the day that he died. The same parties witnessed this transaction and this, notwithstanding the fact that visitors and persons employed in the home of Richard Hall during his last ill-

ness and some of whom were there practically all the time were never called in as witnesses to and knew nothing about either of the transactions. The evidence and the proven facts and circumstances admit of no other conclusion than that Richard Hall was in a state of practical coma at the time this last transaction is claimed to have taken place and that his mental faculties were so impaired that he did not know and could not comprehend or understand and appreciate the nature and effect of any business transactions. The evidence of this transaction casts its shadow over and further beclouds the other and strongly conduces to show that both were conceived in and carried out by a mind or minds other than that of Richard Hall.

As has often been stated by this court, one possessed of mentality sufficient to comprehend what he is doing and to understand the nature of his acts and to appreciate and weigh their consequences and effect has sufficient capacity to make a deed, and this court has often given recognition to the doctrine that one possessing such capacity may give his property to his relatives or sell it to them for less than its real value and generally in the absence of showing of fraud or undue influence such transaction will be allowed to stand. See Jones v. Stamps, 194 Ky. 377, 238 S. W. 762; Belcher v. Belcher, 202 Ky. 104, 259 S. W. 54; Risner v. Risner, 261 Ky. 359, 87 S. W. (2d) 970. Ordinarily one alleging fraud, undue influence, etc., has the burden of establishing same but when in instances of this character, where the relation of father and son exists and the former is old and infirm and because of mental and physical infirmities is in the custody and practically under the control of the latter, while the latter is young, alert, healthy and vigorous, the burden shifts to him to show that the grantor or donor had mental capacity sufficient to know that he was making a conveyance or gift of his property and to appreciate the consequences and effect of his acts. Petrey's Adm'r v. Petrey, 262 Ky. 222, 90 S. W. (2d) 4; Masters v. Comley, 244 Ky. 646, 51 S. W. (2d) 939; Strain v. Strain, 237 Ky. 270, 35 S. W. (2d) 306. We unhesitatingly conclude that appellee signally failed to meet that burden.

Concerning appellee's plea in bar and estoppel growing out of the signing of the disclaimers signed by appellant and filed in the suits of Diamond Waddle

and others against appellee, it appears in evidence for appellant that appellee did not notify her of the serious illness of her father but she learned of it through a letter from another relative and immediately borrowed money sufficient to return to Kentucky but arrived at the old home after her father had been buried; that she was in poor health and in a depressed state of mind due to sorrow over the death of her father and the fact that she had not reached him before his demise; that her brother David told her the Waddle heirs were annoying him with litigation; that at the time she signed the papers she was at the home of an aunt who had just died and this added to her grief and disturbed state of mind; that when the papers were presented for her signature her brother told her that their only purpose was to keep her from being dragged out into the cold to go some miles to the county seat as a witness; that appellee told her that she would receive her share of the estate to the last penny and she had been reassured of this fact by Lawrence Hall. In the main she was corroborated by others. On the other hand appellee denies that he misrepresented the matter to his sister and he and others testified that the papers were read and explained to her. There was no consideration whatever for appellant disclaiming her interest in her father's estate and in her condition, physically and financially, it is not reasonable to believe that she would have done so unless misled. The other transactions hereinbefore discussed likewise cast their shadow of doubt over this transaction and indicate that superior and designing minds actuated by the same purposes procured the signature to this document without making known to appellant its purport and effect.

As to the appeal prosecuted by the executor of Lena Hall and the children of Joe Hall, it is sufficient to say that Lena Hall, Ernest Hall, Lawrence Hall, George Hall and possibly others of the children of Joe Hall, were parties to the action and did not set up or assert any claim of right or title to any of the lands in controversy or to rents and royalties derived from leases on the land. Therefore they are bound by the judgment. While there is some doubt concerning the validity of the gift and transfer of the certificate of deposit for $4,200 from Richard Hall to David Hall about 10 months before the death of the former, we are not inclined from the evidence as a whole to hold that gift invalid, but

we do conclude without any hesitation that in all other respects the chancellor erred in not granting to appellant the relief sought and not adjudging that the deeds be set aside, cancelled and held for nought and that David Hall, as administrator of Richard Hall, be required to make a settlement and to account for all money and personal property owned by the decedent at the time or immediately before the alleged gift was made a few days before his death and that appellant be allotted her interest in the land owned by her father and that she also be given her distributable share in his personal estate.

Upon a return of the case and as between appellant Merica Newman and appellee, the actions of Diamond Waddle and others against David Hall and others should be restored to the docket and consolidated with these actions and it should be adjudged that the disclaimers signed by Merica Newman and filed therein are null and void and of no effect and that she is not bound by them nor by any judgment, pleading or order in those actions.

While the evidence clearly indicates that Joe Hall did not in fact own any of the land referred to in the pleading, some of the land had been deeded jointly to him and to Richard Hall. He exercised no dominion or control over the land, made no claim to it and the joint lease was executed at the behest of the lessee and because the deed had been jointly made to Richard and Joe Hall; however, on a return of the case, any heirs at law of Joe Hall who were not parties in the court below may on return of the case file pleading asserting any claim they may have if they desire to do so.

Wherefore, the judgment on appeal of Merica Newman is reversed with directions to set it aside and for proceedings and judgment in conformity with this opinion, but is affirmed on appeal of Lena Hall's executor, et al., as to heirs of Joe Hall who were parties to the action in the lower court.